Southeastern Greene Joint School District *v.*
Dunkard Township School District,
Appellant.

Argued March 17, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

reargument refused July 2, 1959.

Adjudication entered finding for plaintiff, and order entered. Defendant, school district, appealed.

*W. Robert Thompson,* with him *John E. Baily,* and *Thompson and Baily,* for appellant.

*Thomas R. Balaban,* with him *Smith, Marion & Balaban,* for appellees.

OPINION BY MR. JUSTICE COHEN, May 28, 1959:

The appellee, Southeastern Greene Joint School District, is comprised of four fourth class school districts: Monongahela Township School District, Greene Township School District, School District of the Borough of Greensboro, and Dunkard Township School District. The system was first organized on August 7, 1951 by three of the districts—The Greene Township School District came into the jointure at a subsequent date.

The joint school agreement in this case was entered into for the purpose of establishing a joint school, grades seven to twelve inclusive, and for erecting a high school building. It also provided that affairs of the joint district would be administered by a "joint school committee" composed of one director and one alternate from each of the school districts participating in the said joint school, as provided in Article 17 of the Public School Code of 1949, P. L. 30, as amended, 24 P.S. §17-1707.

From the date of this joint school agreement the boards, insofar as the selection of a site for the high school building was concerned, followed the provisions of the jointure contract. Various meetings and discussions were held concerning the selection of a site

and in October, 1957, the joint school committee approved the purchase of the Barb land as a site for $3000. Bills for their pro rata share of the cost were submitted to each member district and all, except Dunkard, the appellant, paid.

On January 8, 1958, Dunkard Township adopted a resolution wherein it refused to execute the necessary form for use with state public school building authority applications, and further resolved it would not be obligated by member districts of Southeastern Greene Joint School District for a building program without its expressed approval. The appellee joint school district filed a petition for a declaratory judgment against Dunkard Township to determine if the appellant school board is obligated to participate and cooperate in the construction of the senior high school building.

After hearing testimony, the lower court issued an order declaring that the appellant was bound by the action of the joint school district to purchase the Barb land and pay its pro rata share of the cost. It also found that Dunkard is bound by any decision of the joint school district concerning the construction and financing of the senior high school building when the decision is made with the concurrence of a majority of the members of two-thirds of the constituents of the district and a majority of all the individual members of the various boards, and that the appellant is also bound by any decision of the joint school committee receiving the affirmative vote of a majority of the members thereof of any and all matters lately delegated to it within the limits of the budget adopted by any of the school boards. Without filing any exceptions to the lower court's findings, adjudication and order the appellant brought this appeal.

The appellant concedes that it is liable for its pro rata share of the purchase price of the Barb land. The

only problem that remains in this appeal is whether Dunkard could legally withdraw from the jointure in 1958. On this point we affirm the order of the court below on the following excerpts of the able opinion of President Judge Hook: "A troublesome question remains as to the construction or interpretation of the ninth paragraph of the jointure, which reads as follows: 'It is further agreed that said joint school board shall immediately proceed towards the erection of a senior high school building, and proceed with due diligence until the same is completed, unless prevented by circumstances beyond the control of the committee, and . . . if actual construction of the senior high school has not been commenced within three years of the date hereof, then any district may withdraw.' Does the foregoing provision mean, as contended by defendant, that it could legally withdraw from said jointure at the end of the school term 1957-58?

"In construing the terms of the jointure agreement, the same must be studied in conjunction with the Constitution of the Commonwealth of Pennsylvania, the policy of the Legislature, the applicable provisions of the Public School Code, and the action and conduct of the parties. This joint school district was formed for the announced purpose of furnishing the best possible educational opportunities for the children of the member districts. It was the obligation of the joint school board to solve the senior high school building program. In accordance with the terms of the Articles of Jointure, following the organization of the joint school district, immediate plans were made for the selection of the site for the construction of the senior high school building. At the outset, Dunkard Township participated and voted favorably in connection with any activity associated with the construction of the senior high school building, but never voted in favor of a site located out of Dunkard Township.

"It is to be noted that joint school boards in erecting new buildings must have the approval of the County Board of School Directors, and the Department of Public Instruction. In accordance with said procedure, the joint school boards consulted an architect, submitted an application for approval of the project to the Greene County Board of School Directors, the Department of Public Instruction of the Commonwealth of Pennsylvania, and also to the State Public School Building Authority for the financing thereof.

"On April 2, 1955, the plans for a senior high school building were submitted to the State Public School Building Fund Authority, and the project was given building project No. 569. Seemingly there has been a considerable period of time from the date of the jointure until the building project was approved, but at no time can it be said that the joint district did not proceed with due diligence. Whatever delay has been occasioned, was principally on account of the failure to agree upon a site for the new senior high school building, and to bring the cost of the project within the ability of the joint district to pay, and to obtain the approval of the Department of Public Instruction.

"We do not believe it to have been the intention of the constituent members of said joint school district that any one of them had a legal right to withdraw after all preliminary negotiations had been completed for the construction of a senior high school building. While it is true that prior to the expiration of the three year period that the defendant school district did elect to withdraw from the jointure, it later elected to rescind said action, and at all times has received the benefits entitled under the School Code by reason of being a member of the jointure.

"We have examined the other reasons assigned by defendant, and believe they are without merit. While

it may be that a merger of the constituent members composing the joint school district would be the most economical, and for the best interest of the respective districts, the same does not in any way affect the validity of the jointure agreement. It is not necessary to submit any question under the contract of jointure to the electors of the constituent school districts. Detweiler v. Hatfield Borough School District, 376 Pa. 555.

"What the Court said in Slippery Rock Area Joint School System v. Franklin Township School District, 389 Pa. 435, 444, is applicable to the facts of the present case. 'Thus, under the jointure, it is the action of the jointure binding all of the districts which is the legally operative fact. On this question, the action of the individual board no longer has any specific impact on the individual district. It is an impact by the action of the joint board over all the member districts. The language of the statute bears repeating here. The several boards . . . are hereby authorized to meet jointly and to exercise the same power and authority over the same (the members of the system) as the several boards exercised over the schools in their respective districts. Certainly the power of an individual board, not a member of a jointure, to execute such a lease rental agreement cannot be questioned.' "

Order affirmed.