**Ellis Estate**

Before Klein, Bolger, Lefever, Saylor and Shoyer, JJ.

*Leonard J. Cooper* and *Wolf, Block, Schorr & Solis-Cohen,* for petitioner.

*Leonard T. Adis* and *Verlin, Goldberg, Ellis & Epstein,* contra.

KLEIN, Adm. J., March 17, 1970.—Edwin J. Ellis died December 25, 1965. He left the residue of his estate to his trustees with directions that it be divided into two fractional shares, one to be known as the "marital portion" and the other as the "nonmarital portion."

Testator provided that the net income from the marital portion be given to his wife for life, together with "Such portions of the principal of the trust as [she] may in writing request from time to time. . . ," and upon her death he provided that the principal of the trust then remaining be distributed to and among such persons, including her own estate, as she by specific reference to the trust might appoint by her last will and testament. In default of appointment, the principal of the marital portion becomes part of the nonmarital portion.

With respect to the nonmarital portion, testator provided that the income shall be accumulated and added to principal "As long as there is any balance remaining in the Marital Portion . ." He provided, further, that "After the Marital Portion shall have become exhausted, all of the income of the Nonmarital Portion shall be paid to my wife during her lifetime . . ." together with " . . . such portions of the principal of the Nonmarital Portion as my wife shall in writing request from time to time; provided, however, that the aggregate of the withdrawals in any calendar year shall not exceed Five Thousand Dollars ($5,000) or five percent (5%) of the undistributed principal, whichever is the greater sum." The trustees were authorized to distribute to the wife, in addition to the foregoing, such sums from the principal, from time to time, as in their sole judgment may be needed for her maintenance and support. Testator provided, further, that the trust was to terminate upon the death of his wife and that the undistributed balance of principal be distributed in the following manner: "(1) Any stock held in the trust of Jacob Ellis Realties, Inc., and any indebtedness owing by said corporation to the trust shall be distributed to my sister, ELEANOR E. LONDON, provided she is then living; and (2) all the balance thereof and all undistributed income, and the stock and indebtedness of Jacob Ellis Realties, Inc., if my sister is not then living, shall be distributed to my nephew, JACK N. SHEPPARD, JR., or if he is not then living, to his issue then living, per stirpes."

At the audit of the executors' account before Burke, J., the accountants, pursuant to a written demand, requested distribution to Agnes B. Ellis, the widow, of the entire principal of the marital portion and five percent of the undistributed principal of the nonmarital portion. The auditing judge properly denied the re-

quest for payments from the principal of the trusts and said:

"The demand of the widow for payments of principal from either trust is premature. Her rights in the trusts cannot be declared until the trusts are established. An executorship is not a trust, nor is an executor a trustee. Until the marital trust is established and the assets thereof set aside in accordance with the provisions of the will it is impossible to know the extent of the widow's claim. Indeed it is essential that the marital trust be set up to exonerate the general assets of the estate. Since the widow's demand affects the interests in remainder, all parties, including minors, unborn persons, and other unascertained interest should be represented. All of this may be done more properly at the audit of the trustees' account."

The adjudication did, however, award the marital portion to the trustees "subject to the request of Agnes B. Ellis for payment to her of the principal of the trust. . ." On this authority the executors distributed the marital portion to the widow, as reflected in a schedule of distribution approved by the auditing judge on August 5, 1969.

On October 29, 1969, the widow filed a petition in which she asked for a citation, directed to the three trustees, decedent's sister, Eleanor E. London, and his nephew, Jack N. Sheppard, Jr., to show cause why the said trustees should not forthwith distribute to her five percent of the principal of the nonmarital portion for each of the years 1967, 1968 and 1969, and all the income from and after September 5, 1967.

Jack N. Sheppard, Jr., testator's nephew, filed an answer in which he challenged the right of the widow to the income from the nonmarital portion. He contends that when testator gave his wife rights in the nonmarital portion "after the Marital Portion shall

have become exhausted" he did not intend that these assets should be deemed exhausted merely because they were transferred to the widow in a lump sum and not placed in the trust. He also contends that if she is entitled to any withdrawals from principal it should not commence earlier than October 1, 1969, when distribution of the marital portion was completed.

We have serious doubts about the procedure adopted by the widow. She is asking us to decide upon petition and answer what may be difficult questions of interpretation of her husband's will.

We pose but do not attempt to answer but a few of them. What did testator mean when he said ". . . after the Marital Portion has been exhausted?" Was the fund exhausted when it was distributed to the widow by the executors or is it incumbent upon her to establish that she has spent or disposed of it in some proper manner? Does the fact that the principal asset of testator's estate was his stock in the family business, Jacob Ellis Realties, Inc., and that he provided that his interest would pass to his blood relatives, Eleanor E. London, his sister, and Jack N. Sheppard, Jr., his nephew, and the nephew's issue, upon his wife's death, have a bearing on ascertaining his intent? We are certain that learned counsel for respondents will be able to think of other interesting questions to submit to us during the course of this litigation. We have always refused to pass upon such questions of construction upon petition and answer. We refuse to do so in the instant case. Our practice has uniformly been to compel the fiduciary to file an account so that such questions could be submitted at the audit, after due notice to all parties having an interest in the proceedings. Our experience has demonstrated that this is the most satisfactory method to dispose of such litigation.

In rare cases, where an accounting was impracti-

cal or impossible, we have permitted some issues to be submitted in declaratory judgment proceedings. In our opinion, however, this is not such a case. What our eminent predecessor, Judge John Marshall Gest said in Duff's Estate, 4 D. & C. 315, 317 (1924), in denying a request for a declaratory judgment, is still considered sound law and a helpful guide in our practice:

". . . Many procedural difficulties that confront fiduciaries in other jurisdictions as to the rights of creditors, legatees, next of kin, etc., and especially arise in the construction of wills, do not occur with us, for such questions can readily be solved under our own well established practice of having the fiduciary file an account, at the audit of which a speedy settlement may be had by an adjudication, as was pointed out in Morton's Estate, 201 Pa. 269; Jacoby's Estate, 201 Pa. 442, and other cases. This practice is far superior to the originating summons in England, as we may illustrate by a reference to such cases as Re Timson, 1916, 2 Ch. 362, which is frequently cited as an example. See article by Professor Borchard, 28 Yale Law Jour. 128. The question there simply concerned the scope of the word 'issue' in a bequest, and would be disposed of by this court in the most expeditious manner by the adjudication of the trustee's account."

See also the many cases cited in 3 Hunter's Penna. Orphans' Court, §1, p. 429.

This well-established practice was temporarily shaken by the decision of our Supreme Court in Johnson Estate, 403 Pa. 476 (1961), in which the court held that declaratory judgments should be considered as an alternative rather than an extraordinary remedy, and that the existence of another remedy in law or in equity will not per se bar a declaratory judgment. Johnson Estate, however, was soon overruled. In Mohney Estate, 416 Pa. 107 (1964), the court reverted

to the old rule and held that declaratory judgment proceedings should not be entertained if another available and appropriate remedy exists, whether statutory or not. See also Bierkamp v. Rubinstein, 432 Pa. 89 (1968); Greenberg v. Blumberg, 416 Pa. 226 (1965); Lakeland Joint School District Authority v. Scott Township School District, 414 Pa. 451 (1964).

Today, the principles enunciated in Burleigh Estate, 405 Pa. 373 (1961), are regarded as the keystone of testamentary interpretation in this State. In that case, Mr. Chief Justice Bell said, at page 376:

"It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; . . ."

It is clear that all such criteria for interpretation can be best ascertained at the audit of the fiduciaries' account. We are, therefore, in full agreement with Judge Burke's statement that the questions here raised should be presented for determination at the audit of the trustees' account.

In concluding, we point out that it is evident from a reading of this will that the issue of Jack N. Sheppard, Jr., testator's nephew, may have an interest in the remainder of the nonmarital portion. These may be minors or unborn and unascertained persons. Under the circumstances of this case, it is necessary that they be represented in these proceedings by a guardian and trustee ad litem to fully protect their rights and to avoid possible controversy in the future: Gill's Estate, 293 Pa. 199 (1928). See Curry Appeal, 390 Pa. 105 (1957); Kenna Estate, 348 Pa. 214 (1943); Komara's Estates, 311 Pa. 135 (1933); Crawford's Estate, 293 Pa. 570 (1928). See also Fiduciaries Act of

April 18, 1949, P. L. 512, sec. 1085; Phila. O. C. Div. Rule 124.1(a).

For the foregoing reasons, we enter the following

## DECREE

And now, March 17, 1970, it is ordered and decreed that (1) Agnes B. Ellis, Eleanor E. London and Howard J. Erb, Jr., the trustees, are directed to file an account of their administration as trustees within 60 days of the date of this decree; (2) the petition filed by Agnes B. Ellis, widow, to compel payment to her from the nonmarital portion is dismissed pro forma, without prejudice to her right to present her claim at the audit of the trustees' account, and (3) the trustees are directed to file a petition forthwith for the appointment of a guardian ad litem for the issue of Jack N. Sheppard, Jr., who are minors, and a trustee ad litem for those who are unborn and unascertained.