Bonanni, Appellant, *v.* Weston Hauling, Inc.

Argued March 21, 1958. Before JONES C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*John V. Wherry*, with him *Lee C. McCandless*, for appellant.

*Luther C. Braham*, with him *Norman D. Jaffe*, and *Galbreath, Braham, Gregg, Kirkpatrick & Jaffe*, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, April 21, 1958:

At the time of the happening of the accident which gave rise to this lawsuit, the plaintiff, Ray Bonanni, was a shovel operator employed by Miller and Mc-Knight Coal Company in Worth Township, Butler County. In February, 1955, Miller and McKnight entered into a contract with Weston Hauling, Inc.* whereby Weston was to move an Osgood Drag Line Shovel, belonging to Miller and McKnight, from its location near Portersville Station in Worth Township to a point near Cameron Garage on Route 19.

In accordance with this contract, Weston loaded the shovel onto an outfit known as a "tractor and low boy," and moved it 10 or 15 yards when the shovel began to

---

* The suit was originally begun against Mooney Brothers Trucking Co., but by stipulation the name of Weston Hauling was substituted.

lose balance. A Mr. Mooney, officer of Weston, asked Ray Bonanni to mount the shovel for the purpose of "swinging the drag in a better position for transportation." Bonanni endeavored to comply with Mooney's request when suddenly the shovel careened and Bonanni jumped for his life, sustaining serious injuries in the leap. He brought an action in trespass against Weston, charging negligence in that Weston failed properly to fasten the shovel on to the "low boy," that it unskillfully moved the tractor and trailer carrying the shovel, causing it to slide, etc., etc.

The defendant filed preliminary objections, averring that when Bonanni obeyed the instructions of Mr. Mooney he became a "loaned employee" of the defendant company, was accordingly bound by the provisions of the Workmen's Compensation Act, and therefore could not maintain any action at law against this "employer." The Court of Common Pleas of Butler County sustained the preliminary objections and dismissed the complaint. The plaintiff appealed.

The dismissal of the complaint was error. There is nothing in the complaint which warrants the statement in the lower Court's opinion that Bonanni was "hired" by Weston. In granting summary judgment on pleadings a court may not go beyond the pleadings. What this Court stated in *Detweiler v. Hatfield Boro. Sch. Dist.*, 376 Pa. 555, 558, is still law: ". . . The time honored principle that in passing on a demurrer a court cannot consider matters collateral to the pleading opposed but only such matters as arise out of the statement of claim or complaint itself, is still preserved under Pa. R.C.P. 1017. (See Goodrich-Amram Civil Practice section 1017 (b)-11)."

If there is any basis for the Court's action in this case, it must be found in paragraphs IV and V of the complaint, for it is only in those paragraphs that any

mention is made of the relationship between the plaintiff and the defendant company. Paragraph IV reads as follows: "In compliance with their contract Mooney Brothers Trucking Company [Weston Hauling, Inc.] undertook to and did load said shovel on their outfit consisting of a tractor and low boy and attempted to fasten and secure said shovel ready for transportation to the new location and moved the same a distance of 10 to 15 yards when Mr. Mooney, an officer and member of said corporation in charge of said operation, requested the plaintiff, Ray Bonanni, to mount said shovel and put the same in operation for the purpose of swinging the drag in a better position for transportation."

The strongest expression in this paragraph on which to load the meaning given to the relationship between Bonanni and Weston, is the word "requested." *Requested* is hardly a "low boy" of sufficient strength to carry the ponderous weight of an employer-employee alliance.

The learned Court below, interpreting Paragraph IV of the Complaint, says that "an officer of the defendant company in charge of the operation called upon the plaintiff to render certain services for the defendant necessary in the moving of the equipment; i.e., in the carrying out or performance of the contract by said defendant." But a "calling upon" does not invest the caller with authority to make of the person called an employee. Many a stranded motorist calls upon bystanders to lend him a hand in extricating his car from the mud or snow into which it has sunk, but no one could argue with reason that the summoned Samaritans thus become employees of the benefiting motorist.

Nor does paragraph V of the complaint add anything to support the forced interpretation given to

paragraph IV by the Court below. Paragraph V reads: "The plaintiff relying on the statement of Mr. Mooney mounted said shovel and proceeded to carry out the instructions when the shovel careened off its location forcing the plaintiff to jump off the same to save his life, at which time he received the injuries hereinafter set forth."

The strongest word in this paragraph is "instructions." The word *instruction* does not necessarily denote control. Even a stranger may instruct a passerby on how to reach an inquired-for destination. To instruct is not to authorize, direct, or command unless antecedent circumstances, which are utterly lacking here, impel such a construction.

The fact that Bonanni was an employee of Miller and McKnight, which owned the shovel which was being transported by Weston, in no way bolsters the supposition of a Bonanni-Weston employer-employee relationship. If anything, it is evidence against the "loaned employee" theory. There is nothing in the complaint which excludes the possibility that Bonanni was accompanying the shovel in order to protect the property of his employer, Miller and McKnight.

This Court has often laid down the test as to whether an employee who accompanies a piece of equipment becomes the employee of the borrower or, as in this case, the transporter, of it. In *Siidekum v. Animal Rescue League,* 353 Pa. 408, 413, Justice STERN (later Chief Justice) said: "By a continuous stream of authorities it has been declared that where one person lends his servant to another for a special employment the test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his general master or becomes subject to that of the party to whom he is lent or hired; the criterion is not whether the borrowing employer *in*

*fact* exercises control but whether he has the *right* to exercise it."

In the case at bar there is not a line in the complaint which remotely suggests that Bonanni was loaned to Weston and there is not a whisper rising from the entire transaction which can be magnified into an assumption that Bonanni was working for Weston.

In *Pennsylvania Smelting Co. v. Duffin,* 363 Pa. 564, 567, we said: "Where one is engaged in the business of renting out trucks, automobiles, cranes, or any other machine, and furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master, since he is engaged in the very occupation for which he was originally so employed."

If, as in the two cases just cited, the operator of the equipment may not ipso facto be considered the employee of the person who borrowed it, with what less reason should he become the employee of the defendant in this case where Bonanni's service was only fortuitous and gratuitous and, even by the most circuitous reasoning, never reached the suburbs of Weston's control.

Judgment reversed with a procedendo.