Pritchard, Appellant, *v.* Wick.

Argued January 16, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Raymond Pearlstine,* with him *Ralph B. D'Iorio, Morris Gerber, Charles Potash,* and *Wisler, Pearlstine, Talone and Gerber,* and *Hodge, Hodge and Cramp,* for appellant.

*James L. Rankin,* with him *Rankin & Rankin,* for appellee.

OPINION BY MR. JUSTICE EAGEN, March 13, 1962:

John C. Pritchard, plaintiff in an action in equity, appeals from an order entered in the court below sustaining preliminary objections to the complaint in the nature of a demurrer.

In determining whether or not the action of the lower court is correct, all facts well pleaded in the complaint must be deemed to be true: *Bonanni v. Weston Hauling, Inc.,* 392 Pa. 248, 140 A. 2d 591 (1958). They may be summarized thusly: In November 1947 the plaintiff was an employee of the I.C.C. Loan Company, a Pennsylvania corporation. The defendant-appellee was the owner of all the then issued stock of said com-

pany, consisting of fifty $100 par value shares, and also the stock of the Industrial Loan Company. In consideration of plaintiff's promise to remain in the employment of I.C.C., the defendant executed and delivered a written agreement wherein he granted certain options to the plaintiff in connection with the purchase of all of the defendant's stock in the companies above named.

The pertinent provisions of the contract were as follows:

"1. That the Optionor hereby gives to the Optionee, and the Optionee hereby accepts, the exclusive right to purchase, upon written demand made by the Optionee *as hereinafter provided*[1] all of the aforesaid shares of stock in the ICC Loan Company and the Industrial Consumer Discount Company at the book value of said stock as of the date of the exercise of the option herein granted.

"2. (a) That if the Optionor, at any time hereafter, shall decide to offer the said loan business for sale, before selling or attempting to sell the same to any person, or persons, or corporation, or corporations, he shall give written notice of such intention to the Optionee; and, thereupon, the Optionee may, within 30 days after the receipt by him of such notice, exercise his said option, by giving to the Optionor written notice of his intention to do so.

"(b) That if the Optionor shall die, during the lifetime of the Optionee, the Optionee may, within 15 days after the appointment of an executor, or administrator, of the Optionor, but not thereafter, exercise his option, by giving a written notice of his intention to do so to such executor or administrator."

On June 10, 1960, the plaintiff, having remained continuously in his employment with I. C. C. through

---

[1] Emphasis ours.

the years, gave the defendant notice in writing that he desired to exercise his rights under the contract to purchase all of the stock then owned by the defendant in the I. C. C. Loan Company.[2]  The defendant refused to comply with the plaintiff's demand.  This action to compel specific performance resulted.

Plaintiff's cause of action and his alleged right to purchase the stock is based upon Paragraph 1 of the agreement and premised upon the contention that a grant is given therein which is separate and distinct from the options provided for in Paragraphs 2(a) and 2(b).[3]  The lower court construed the agreement to give the plaintiff an option to purchase only in the event of certain specified contingencies and concluded that since none of the expressed contingencies had occurred, the instant action could not presently be maintained.  This decision was correct.

In construing the meaning of a written contract, it must be considered in totality.  This Court, in *Phila. v. Phila. Transportation Co.*, 345 Pa. 244, 250, 251, 26 A. 2d 909 (1942), in speaking of the interpretation of contracts, stated: "In interpreting the foregoing provision, five principles of construction should be kept in mind.  The first is that the entire contract should be read as a whole and every part interpreted with reference to the whole, so as to give effect to its true purpose: (citing cases).  The second is that 'the contract itself must be read in the light of the circumstances

---

[2] As a result of a stock split, the original fifty shares owned by the defendant in I. C. C. have grown to 2500 shares at the par value of $2 per share. With these and shares acquired by purchase, the defendant has come to own a total of 24,500 shares of common stock out of a total of 26,590 and also $6100 par value preferred stock out of a total of $242,000. Industrial Loan Company has been dissolved.

[3] It is not asserted that the contingencies outlined in Paragraphs 2(a) and 2(b) have occurred or are involved.

under which it was made' and that it is necessary to 'consider the situation of the parties at that time, the necessities for which they naturally provided, the advantages each probably sought to secure and the relation of the properties and rights in regard to which they negotiated:' (citing cases). The third is that where a public interest is affected, an interpretation is preferred which favors the public: (citing cases). The fourth is that specific provisions ordinarily will be regarded as qualifying the meaning of broad general words in relation to a particular subject: (citing cases). And the fifth is that, unless contrary to the plain meaning of the contract, an interpretation given by the parties themselves will be favored: (citing cases)." In *N. D. Ivey Co. v. Franklin Associates, Inc.*, 370 Pa. 225, 231, 232, 87 A. 2d 236 (1952), we stated: "It is a rule of universal application that in construing a contract each and every part of it must be taken into consideration and given effect if possible, and that the intention of the parties must be ascertained from the entire instrument. An interpretation will not be given to one part of a contract which will annul another part of it: (citing cases)."

In studying the entire contract involved, it is readily apparent that Paragraph 1 gives no separate and distinct option. No time is fixed for any such exercise and it is clearly manifest that the words contained therein, "as hereinafter provided" tie up Paragraph 1 beyond severance with the provisions recited in Paragraphs 2(a) and 2(b). To subscribe to the construction that the plaintiff asserts would mean that one day or one hour after the execution of the agreement, the plaintiff could legally demand that the defendant sell him the stock involved. Such a conclusion is unreasonable and borders on the ridiculous. While the intention of the parties is clearly evident to us, assuming, arguendo, that the language of the contract is

doubtful and is susceptible of two constructions, one of which makes it fair, customary and such as prudent men would naturally execute, while the other makes it inequitable, unusual or such as reasonable men would not likely enter into, the interpretation which makes a rational and probable agreement must be preferred: *Wilkes-Barre Twp. School District v. Corgan*, 403 Pa. 383, 170 A. 2d 97 (1961). The plaintiff's proposed construction, certainly, is not reasonable and one which prudent men would likely intend.

Other provisions of the agreement strengthen our conclusions. For instance, in the recital of the agreement we find, inter alia, the following: "WHEREAS, the Optionor desires to retain the services of the Optionee in the said business, *during the lifetime of the Optionor, or as long as the Optionor shall be engaged in said business.*"[4] Could anything more explicitly indicate the intention of the parties?

Again, Paragraph 5 of the agreement states, it shall be void if the appellant did not continue in the employ of the optionor all of the time between the execution of the agreement "and the time or times *fixed*[5] for the exercise of the aforesaid option." The importance of Paragraphs 2 and 3 is thus re-emphasized because nowhere else in the contract is there any reference to the time in which the right to exercise the option is mentioned.

The language of the agreement is unambiguous, its meaning is clear. No parol evidence is necessary to aid in its interpretation.

Order affirmed. Costs to be paid by appellant.

---

[4] Emphasis ours.
[5] Emphasis supplied.