## Sage v. Police Pension Commission

*Francis W. Rice*, of *Rice & Rice*, and *Thomas D. Caldwell, Jr.*, of *Caldwell, Clouser & Kearns*, for plaintiff.
*Sanford S. Marateck*, of *Lark, Makowski & Marateck*, for defendants.

KIVKO, P. J., October 28, 1975—George P. Sage instituted an action in mandamus to recover back pension awards and future pension increments as set forth in the contract of employment between the City of Shamokin and members of the Shamokin City Police Department for the period January 1, 1970, to December 31, 1970. The Police Pension Commission of the City of Shamokin filed preliminary objections in the nature of a demurrer. In the consideration of these preliminary objections, the court accepts as true all material and relevant facts well pleaded in the complaint and every inference fairly deducible therefrom: Papieves v. Kelly, 437 Pa. 373, 263 A. 2d 118 (1973).

Plaintiff was a police officer of the Shamokin City Police Department from April 2, 1940, until retirement from full-time service on March 7, 1970.

The City of Shamokin passed a Police Pension Fund ordinance on February 7, 1950, and amended in May 1961. Section 9 of this ordinance provided an employe could voluntarily retire at the end of 30 years continuous service or at the age of 60 years.

Section 11 authorized the Police Pension Commission to retire any employe who served continuously for a 30-year period, but the ordinance did not provide any age criterion by which an employe could be involuntarily retired. This pension plan was superseded as of January 1, 1970, by a contract of employment containing pension benefits between the City of Shamokin and the Shamokin City Police Department. Unlike the pension ordinance, this agreement provided that: "Section 1: Pension . . . 2. Compulsory retirement of all police is required at 65 years of age." Other pertinent changes made by the agreement were an increase in salaries and a new service increment schedule.

Plaintiff became 65 years of age on December 27, 1969, that is, before the effective date of the new pension agreement. However, he did not retire from active, full-time service until after the new agreement went into effect. Plaintiff is in a position whereby a new employment contract went into effect containing a compulsory retirement age which he had already reached; a contract which also provided for increased pension benefits. The question presented is whether his age and, therefore, the agreement, preclude him from entitlement to the pension benefits of the new agreement.

In interpreting the new agreement, we are guided by several principles of construction, applicable whether the writing is clear or ambiguous. The first principle of construction is that the contract must be considered in totality: Pritchard v. Wick, 406 Pa. 598, 601, 178 A. 2d 725 (1962). The entire contract should be read as a whole and every part interpreted with reference to the whole, so as to effect to its true purpose: Philadelphia v. Philadelphia Transportation Co., 345 Pa. 244, 250-251, 26 A. 2d 909 (1942). The court's primary objective is to

ascertain and give effect to the intention of the parties. See 4 Williston on Contracts, §618, 705 (3rd Ed.).

The employment agreement effective January 1, 1970, stated that "compulsory retirement of all police is required at 65 years of age," but was silent with regard to present employes who may have already reached said age. The agreement was entered into by the employes of the Shamokin City Police Department, of which plaintiff was a member when the agreement went into effect. Prior to this agreement, these employes were entitled by section 9 of the 1950 ordinance to voluntarily retire at age 60, but could not on the basis of age be forced to retire involuntarily. By binding themselves to compulsory retirement at age 65 under the new agreement, these employes were giving up their previous ability to continue employment past that age. It must be assumed that the promise to retire at age 65 was in exchange for the promises of the new employe benefits in the agreement, including increased salary and pension benefits. Therefore, the parties to the agreement intended that any employe forced to retire by operation of the new agreement would be entitled to the benefits of the new agreement. The mandatory retirement provision does not stand by itself and preclude an employe already 65 from entitlement of the agreement's benefits. "It is a rule of universal application that in construing a contract each and every part of it must be taken into consideration and given effect if possible, and that the intention of the parties must be ascertained from the entire instrument. An interpretation will not be given to one part of a contract which will annul another part of it. . . .": Neal D. Ivey Co. v. Franklin Associates, Inc., 370 Pa. 225, 231-32, 87 A. 2d 236 (1952); Cerceo v.

DeMarco, 391 Pa. 157, 162, 137 A. 2d 296 (1958). To interpret the mandatory retirement provision as precluding present employes already 65 from recovery of benefits under the agreement would annul the benefit promises given in return for the forced retirement.

Nor can the agreement be construed to retroactively retire any employes, including plaintiff. Plaintiff was not retired prior to the effective date of the new agreement. The agreement does automatically retire any employe 65 years of age, but not, however, until the agreement itself comes into effect on January 1, 1970. Plaintiff is considered automatically retired by the operation of the new agreement concurrently with the effective date of that agreement on January 1, 1970.

We conclude that plaintiff entered into the new agreement whereby compulsory retirement was agreed to in exchange for the promise of increased benefits. By operation of the agreement, plaintiff was retired involuntarily and, therefore, would be entitled to the benefits of that agreement. Plaintiff was not retired when the agreement went into effect; the automatic retirement was, therefore, concurrent with the effective date of the agreement. Retiring under the agreement, plaintiff is entitled to the agreement's benefits. Either line of reasoning supports plaintiff's claim.

We, therefore, enter the following

## ORDER

And now, October 28, 1975, the preliminary objections of defendants in the nature of a demurrer are dismissed. The time for the filing of an answer to plaintiff's complaint is extended for a period of 20 days from this date.