**Metropolitan Edison Company v.
United Engineers & Constructors, Inc.**

474

*Robert S. Ryan,* , for plaintiffs.
*Bernard J. Smolens* and *Edward B. McDaid,* for defendants.

TAKIFF, *J.,* October 6, 1977 — This complaint arises out of contracts executed by plaintiff Met-

ropolitan Edison Company (hereinafter referred to as "Met-Ed") and defendants United Engineers & Constructors, Inc. (hereinafter referred to as "UE&C") and Gilbert Associates, Inc. (hereinafter referred to as "Gilbert") in February, 1967 for the design and construction of a nuclear power plant (hereinafter referred to as "TMI-1") on Three Mile Island in the Susquehanna River. The plant which resulted from the contracts went into commercial operation in early September, 1974, having been completed shortly before that time.

The complaint contains six counts—three against UE&C and three against Gilbert—the first two against each defendant being in assumpsit on breach of express and implied warranties, respectively, and the third being in trespass and sounding in negligence. Two additional plaintiffs—Pennsylvania Electric Company (hereinafter referred to as "Penelec") and Jersey Central Power & Light Company (hereinafter referred to as "Jersey Central")—have joined in each count. Both defendants have raised preliminary objections moving to dismiss additional plaintiffs, demurring to the counts in assumpsit, and moving to strike certain averments in the complaint concerning action by the Pennsylvania PUC with respect to certain rate applications. Gilbert has further moved for more specificity in plaintiffs' allegations of damages.

Having examined the complaint and the first amended complaint, we conclude that additional plaintiffs—Penelec and Jersey Central—should be dismissed, that the demurrers to counts one, two, four and five, in assumpsit, should be overruled, that paragraph 32 of the complaint concerning the PUC should be stricken, and that defendant Gil-

bert's motion for more specific pleading should be overruled.

## I. THE ADDITIONAL PLAINTIFFS

Rule 2002 of the Pennsylvania Rules of Civil Procedure requires that all actions must be prosecuted by the real party in interest. The only basis claimed by plaintiffs for Penelec and Jersey Central's interest in the instant case rests on the claimed assignment of a part of the chose in action resulting from Met-Ed's contracts with UE&C and Gilbert. Plaintiffs aver in paragraph 1 of their first amended complaint that the indenture transferring undivided 25 percent interests in TMI-1 to Penelec and Jersey Central respectively, also operates as an assignment of several 25 percent interests in the present chose in action, namely these claims, to them. Having reviewed the indenture of sale (Exhibit "C" appended to plaintiff's amended complaint) which is the sole source alleged for the claimed assignments, we conclude as a matter of law that no such assignments were effected by operation of this document.

While an assignment of an interest in a chose in action may be oral or written: McCleery v. Stoup, 32 Pa. Superior Ct. 42 (1906); and need not be expressed in any particular words or form: Moeser v. Schneider, 158 Pa. 412, 27 Atl. 1088 (1893); nonetheless, if founded on a writing, the owner's intention to assign must be clearly shown on the offered document: First Nat. Bank & Trust Co. v. Jaffe, 114 Pa. Superior Ct. 315, 173 Atl. 845 (1934). No such intention is expressed nor can it be reasonably inferred from any clause in plaintiff's indenture.

The document purports to transfer interests in

real property associated with unit one of Met-Ed's Three Mile Island nuclear station (TMI-1), and interests in certain personal property "useful in connection with said Unit One. . . ." The instrument describes the nature of the personal property to be conveyed in two numbered paragraphs. The first concerns tangible machinery, equipment and the like; the second concerns governmental licenses, permits and authorizations. Both paragraphs contain a catch-all at the end of the respective lists to the effect of "and other personal property." Such general words, however, are traditionally construed as limited in scope by those specific words preceding them under the doctrine of ejusdem generis. Cf., In re Einhorn Bros., Inc., 171 F. Supp. 655, 657-58 (E.D.Pa. 1959), aff'd 272 F. 2d 434 (3d Cir. 1959); see also, Pritchard v. Wick, 406 Pa. 598, 602, 178 A. 2d 725 (1962).

Since a chose in action is clearly not of the same nature of personal property either as machinery or equipment on the one hand, or as governmental licenses and such on the other, the general words here cannot be reasonably construed as manifesting an intention to transfer choses in action such as this claim and ensuing lawsuit in this package. No assignment of interest in the present cause of action having been made, plaintiffs Penelec and Jersey Central have no standing as parties in the case at bar and must be dismissed.

## II.  THE EXPRESS WARRANTIES

Plaintiff Met-Ed contends that certain written statements in its contracts with UE&C and Gilbert amount to express warranties. Defendants, finding no language in their contracts that specifically articulates warranty, argue that therefore no express

warranties exist. The issue raised then by defendants' demurrer to the express warranty counts is whether statements made in a written contract, though not mentioning the traditional words of warranty particularly, can amount to an express warranty when taken together as a whole. We hold that they can.

At the outset, it should be noted that construction of a written contract is a matter for the court: J. S. Cornell & Son, Inc. v. Rosenwald, 339 Pa. 18, 22, 13 A. 2d 716 (1940). That is, the court must decide, where there are no latent ambiguities to be resolved by a jury, the legal significance of language employed in a building contract: Keefer v. Sunbury School District, 203 Pa. 334, 337, 52 Atl. 245 (1902). And, in order to reach a proper construction of a contract, the court must consider the contract documents as a whole: Pritchard v. Wick, supra, at 601, citing Philadelphia v. Phila. Transp. Co., 345 Pa. 244, 250-51, 26 A. 2d 909 (1942); Neal D. Ivey Co. v. Franklin Associates, 370 Pa. 225, 231, 87 A. 2d 236 (1952).

Express warranty has been defined by the Supreme Court of the United States:

"Any affirmation of the quality or condition of the thing sold, (not uttered as matter of opinion or belief,) made by the seller at the time of sale, for the purpose of assuring the buyer of the truth of the facts affirmed, and inducing him to make the purchase; if so received and relied on by the purchaser, is an express warranty." Shippen v. Bowen, 122 U.S. 575 (1887), quoting with approval Osgood v. Lewis, 2 H.&G. 495 (Md.). See 8 Williston, Contracts §970 (3d ed. 1964).

The line between a warranty and a contractual undertaking has proven very difficult to draw. And,

indeed, an action will often lie for both breach of contract and breach of warranty. Professor Williston has explained, "[i]t is probable that most persons instinctively think of a warranty as necessarily a contract or promise, but though frequently warranties are true promises and contracts, in other cases they are merely representations which induce a sale. . . ." 8 Williston, Contracts, §970 (3d ed. 1964) (footnotes omitted).

The usual distinction seems to be that a warranty is an *inducement* to enter into a contract. See Williston, supra. In any event, it is well-settled that "a warranty need not be made in formal language, but that any statement of fact made by the seller with respect to the quality or condition of goods offered for sale, which is relied upon by the buyer in purchasing them, constitutes a warranty and will be enforced as such." Distillers Distributing Corp. v. Sherwood Distilling Co., 180 F. 2d 800, 802 (4th Cir. 1950) (Maryland law); 55 C.J. 679 and cases cited therein.

Although in the area of *implied* warranties, warranty principles concerning the sales of goods may not be casually carried over to service or construction contracts, there is no reason or precedent to prevent application of the foregoing principles governing *express* warranties, evolved in sale-of-goods cases, to the present construction contracts.

Having examined the documents appended to plaintiff's amended complaint, we have found two areas of language that can reasonably be construed as an express warranty by UE&C. In its letter of December 14, 1966 to Met-Ed (Exhibit "A"), UE&C states:

"I. SERVICE TO BE RENDERED

"With respect to this work, we propose to act as your own Construction Department, being guided

by such instructions as you may from time to time give us.

"As Constructors, we will execute with our own forces the construction and install the machinery and equipment, awarding contracts for parts of the work when it is to your advantage to do so, and *turn the completed work over to you ready for regular use*." (Emphasis supplied.)

And in another document entitled "Scope of Construction Management Services" prepared by UE&C, it is stated:

"The items set forth below generally cover the scope of construction services which we are prepared to provide: . . .

"(5) Directing, supervising and coordinating all construction activities.

"(6) Administering a Quality Control and Inspection Program meeting standards required for nuclear installations and *assuring that all equipment, material and workmanship are in accordance with the drawings and specifications*." (Emphasis supplied.)

Read together, these statements—particularly UE&C's promise to "turn the completed work over to you ready for regular use" and its assurance "that all equipment, material and workmanship are in accordance with the drawings and specifications"—amount to express warranties. In short, these statements could have reasonably induced plaintiff to enter the contract with UE&C. Whether or not these warranties were breached by the necessity for expensive repairs to an allegedly defective ring girder resulting from any breach or default by either of defendants remains a question to be answered at trial by the trier of fact.

Similarly, there is language in the documents comprising plaintiff's contract with Gilbert (Exhibit "B") that effects express warranty:

"SCOPE OF WORK

"GILBERT will perform all work for the planning, design, estimating, procurement and associated services necessary *to furnish complete plans and specifications and services for an operable and acceptable plant*, excepting for those items and functions which will be furnished by the Nuclear Supplier or Met-Ed as delineated in Exhibit B of this Proposal or identified in the body of this description. Services to be furnished by GILBERT are as follows:

"1.1  Design Engineering

"GILBERT shall make required engineering studies, *determine the type and character of* equipment, materials *and construction required* and prepare detailed plans and specifications covering the Work. *All designs and specifications shall be in accordance with applicable Federal, State and Local laws, codes and regulations. . . .*

"1.1.3  *Prepare complete engineering drawings* and specifications *for all buildings, structures* and facilities included in the Work. These drawings and specifications cover building service systems such as plumbing, heating, air conditioning, ventilating, power and lighting, compressed air, utility steam systems, as well as architectural, civil, *structural*, mechanical and electrical *drawings. These shall be in sufficient detail for use by the Constructor without* additional Plant design engineering effort. . . ." (Emphasis supplied.)

We construe the above language as reasonably calculated to induce plaintiff to rely on Gilbert's

expertise in providing plans and procedures that will assure an "operable and acceptable plant." Again, whether the facts to be proven at trial will show a breach of this warranty is a question for the jury. Furthermore, if plaintiff asserts express warranties other than those found above, they can best be developed upon pre-trial discovery.

## III. THE IMPLIED WARRANTIES

Plaintiff avers in paragraph 66 of its complaint:

"In undertaking a contract to construct the TMI-1 nuclear facility, UE&C impliedly warranted: (i) that it would build the reactor building structure in accordance with the standard of care expected of those who hold themselves out to the public as qualified to engage in this type of building; (ii) that it would build the reactor building structure properly the first time; (iii) that the cost to the owners of the reactor building and the expenses incurred by them would not include amounts required to be paid by reason of the failure of UE&C in the first instance to construct the ring girder of the reactor building in accordance with such standard of care; and (iv) that the date of completion of the TMI-1 nuclear facility would not be delayed by reason of the failure of UE&C in the first instance to construct the ring girder of the reactor building in accordance with the warranted standard of care."

And in paragraph 84, essentially the same averments are made as to Gilbert.

Defendants argue that these stated "implied warranties" do not exist in the law. However, we believe that their objection is founded on a misreading of plaintiff's contentions. It is well-settled that construction contracts contain the implied war-

ranty that work will be performed in a reasonably workmanlike manner whether or not such a promise is expressly stated: Elderkin v. Gaster, 447 Pa. 118, 288 A. 2d 771 (1972); Wade v. Haycock, 25 Pa. 382 (1855). Similarly, architects and engineers impliedly warrant that plans and specifications will yield a structure so designed as to be reasonably fit for its intended purpose. Cf., Bloomsburg Mills v. Sordoni Construction Co., 401 Pa. 358, 164 A. 2d 201 (1960).

The allegations of paragraph 66 of the complaint we view as being language and evidentiary allegations and variations of these well recognized implied warranties. If other legally cognizable implied warranties and the breach thereof are intended by plaintiff, such can be developed through appropriate pre-trial proceedings. Plaintiff's averments sufficiently evoke the legally recognized implied warranties to survive demurrer.

## IV.  PUC ACTIONS

In paragraph 32 of its complaint, plaintiff states:

"The Pennsylvania Public Utility Commission issued decisions on June 10, 1976 removing $2,250,000 (25 percent of $9,000,000) from the rate base of Penelec and on July 6, 1976 removing $4,500,000 (50 percent of $9,000,000) from the rate base of Met-Ed because the cost of the ring girder repair and the subsequent delay cost, according to the Commission, were the responsibility of the engineer and/or constructor and had been improperly included in the cost of the TMI-1 Project."

These allegations have no relevance to the instant action. Plaintiff submitted a request for a rate base increase to the PUC based on its own capital

figures, including the asserted repair expenditures to make the plant operable. The PUC disallowed these amounts apparently because plaintiff might recover the cost of repairs from defendants in this lawsuit; should that be the case, these costs should not be passed on to the ratepayers who would then be subsidizing a double recovery for plaintiff. The amounts of the costs disallowed by the PUC were based on the amounts asserted in plaintiff's rate request. Defendants were not parties to the PUC action and thus had no opportunity to dispute or contest these figures or their responsibility or liability in connection therewith. Since any findings by the PUC under these circumstances could not be binding on defendants in the instant action (being neither res judicata nor collateral estoppel) they have no present relevance or probative value with regard to either liability or measure of damages. The fact of their mention in the PUC opinion has no bearing on the existence or accuracy of these amounts as between plaintiff and defendants in the case at bar. Their only effect is one prejudical to defendants by improperly imbuing plaintiff's allegations with the authority of an official agency of the Commonwealth. Therefore, they must be stricken from plaintiff's complaint, pursuant to Rule 1017(b)(2) Pa. Rules of Civil Procedure as impertinent matter. See Hudock v. Donegal Mutual Ins. Co., 438 Pa. 272, 277-78, 264 A. 2d 668 (1970).

## V.   SPECIFICITY IN PLEADING

Defendant Gilbert has objected that plaintiff's complaint lacks specificity as to damages and other averments, and is therefore impossible to answer. A complaint should contain sufficiently identifiable factual averments to put an adversary on

reasonable notice of the structure of the claim so as to be able to confront the issue responsively. However, it need not be a script of all ultimate evidentiary matters to be revealed at either pre-trial discovery or at trial: 3 Standard Pa. Pract. 459, §187; Mazzarella v. Lehigh Foundations, Inc., 49 D. & C. 2d 198 (1969). "The ultimate test and controlling consideration is whether the complaint adequately informs the adverse party of the issues which he must be prepared to meet so that he may properly prepare his defense for trial." Carvella v. Handy Andy Food Mart, 44 D. & C. 2d 133, 134 (C.P. Lawrence, 1968). Where, as here, the nature of the cause of action is such that defendants have essentially as much knowledge of the facts as does plaintiff, even less specificity as to facts is necessary. Cf., Fromm v. Fromm, 42 D. & C. 2d 77 (C.P. Dauphin, 1967).

The complaint before us is sufficiently specific, especially in light of defendant's familiarity with the relevant circumstances, to enable a proper answer to be prepared. Any further specificity that defendant desires is best obtained through the liberal machinery of pre-trial discovery.

## ORDER

And now, October 6, 1977, pursuant to Rule 1017 of the Pennsylvania Rules of Civil Procedure and upon consideration of the preliminary objections of defendants, and of the parties' briefs submitted in connection therewith, and after oral argument by all interested parties, it is hereby ordered that defendants' preliminary objections are granted in part and denied in part and that (1) plaintiffs, Pennsylvania Electric Company and Jersey Central Power & Light Company, are hereby dismissed

as parties plaintiff in this action, and all claims asserted by them in the complaint are dismissed; and (2) paragraphs 32, 63(iv), 70(iv), 74(iv), 81(iv), 88(iv), and 92(iv) of the complaint are stricken as impertinent matter.