440 A.2d 559

**Herbert E. HAZELL**

v.

**SERVOMATION CORPORATION, Appellant.**

Superior Court of Pennsylvania.

Argued March 25, 1981.

Filed Jan. 19, 1982.

---

466

David P. Baker, York, for appellant.

Carl H. Cordes, York, for appellee.

Before PRICE, WIEAND and LIPEZ, JJ.

WIEAND, Judge:

This is an appeal from a judgment entered following a non-jury trial which resulted in a verdict for appellee in his action to recover commissions earned pursuant to a compensation agreement. At issue is how much of a guaranteed annual draw is to be deducted from commissions to determine the net compensation to which an employee is entitled

upon termination of his employment. The court en banc held that only a pro-rated portion was deductible from earned commissions in order to determine compensation at the time of terminating employment. We agree and affirm.

Herbert E. Hazell, the appellee, was employed by the appellant, Servomation Corporation, as an executive sales representative. The sales incentive compensation plan, by which appellee's compensation was determined, provided for the payment of commissions and a guaranteed draw. Specifically, the agreement provided in paragraph III–C as follows:

"Compensation due will be determined by totaling commissions due at any pre-determined point in time and deducting the amount of annual draw. For the purposes of calculation, and to prevent disproportionate commission payments, the total annual draw of the sales representative will be assessed against his commission payments in one lump sum of [sic] the beginning of each calendar year. If a sales representative begins employment after the start of the calendar year, his draw will be computed in ratio to the unexpired portion of the year."

With respect to the termination of employment, the agreement, in paragraph III–I, provided specifically as follows:

"In the event the Executive Representative leaves the Division or territory to which he is assigned for any reason (termination, transfer, promotion, death, etc.) prior to December 31, *employee will be paid earned incentive [commissions] only if it exceeds his guaranteed draw as of his final date of employment."* (Italics added.)

Hazell's "annual draw" in 1974 had been established at $13,500. He terminated his employment on July 14, 1974, having earned commissions that year which the trial court found to be in the amount of $18,516. At the time of terminating his employment, appellee had been paid a draw of $7,216.88. Appellant contended in the trial court that the full annual draw of $13,500 had to be deducted from appellee's earned commissions in order to determine the amount of compensation remaining due to appellee on July 14. The trial judge agreed. The court en banc reversed. It unani-

mously sustained appellee's exceptions and held that only $7,216.88 should be deducted in order to ascertain the compensation due.

■ In construing the parties' agreement, we are required to read the contract as a whole and interpret each part with reference to the whole, so as to give effect to its true purpose. In so doing, specific provisions ordinarily will be regarded as qualifying the meaning of broad general words in relation to a particular subject. *Minnotte Appeal*, 411 Pa. 492, 496, 192 A.2d 394, 396 (1963); *Pritchard v. Wick*, 406 Pa. 598, 602, 178 A.2d 725, 727 (1962) quoting *City of Philadelphia v. Philadelphia Transportation Company*, 345 Pa. 244, 250, 26 A.2d 909, 912 (1942); *First National Bank of East Conemaugh v. Davies*, 315 Pa. 59, 63, 172 A. 296, 297 (1934).

A straightforward reading of the specific termination provision in the contract would seem to confirm the court en banc's interpretation. Appellant contends, however, that "guaranteed draw" must be equated with "annual draw." It argues further that the phrase "as of his final date of employment" refers to the words "if it [commissions] exceeds guaranteed draw" and does not modify "guaranteed draw" alone. These contentions cannot prevail. They seek to torture the clear language of sub-section I beyond recognition and, in so doing, destroy the simplicity and basic fairness of the compensation plan.

■ The intention of the parties is clear. Upon termination of employment, the salesman is entitled to commissions earned to the extent that earned commissions exceed that part of his guaranteed draw paid to him "as of his final day of employment."

However, if we assume, arguendo, that the language of the contract is ambiguous and susceptible of two constructions, "one of which makes it fair, customary and such as prudent men would naturally execute, while the other makes it inequitable, unusual or such as reasonable men would not likely enter into, the interpretation which makes a rational and probable agreement must be preferred." *Consolidated Tile and Slate Company v. Fox*, 410 Pa. 336, 339, 189 A.2d

228, 229–230 (1963) quoting *Wilkes-Barre Township School District v. Corgan*, 403 Pa. 383, 386, 170 A.2d 97, 98–99 (1961); *Heidt v. Aughenbaugh Coal Company*, 406 Pa. 188, 192, 176 A.2d 400, 401–402 (1962); *Pritchard v. Wick*, supra, 406 Pa. at 603, 178 A.2d at 728. This is particularly true where, as here, the unusual and inequitable interpretation is urged by an employer who prepared an agreement, which it then required employees to sign. *Marcin v. Darling Valve and Manufacturing Company*, 259 F.Supp. 720, 724 (W.D.Pa. 1966); *Unit Vending Company v. Lacas*, 410 Pa. 614, 617, 190 A.2d 298, 300 (1936); *Betterman v. American Stores Company*, 367 Pa. 193, 203, 80 A.2d 66, 73, cert. denied, 342 U.S. 827, 72 S.Ct. 49, 96 L.Ed. 625 (1951); *West v. MacMillan, et al.*, 301 Pa. 344, 349, 152 A. 104, 105 (1930).

We reject appellant's suggestion that the parties intended an employee's right to commissions to be reduced at the termination of his employment by a draw which had not been paid to the employee and which the employer could not be required to pay. Such an interpretation would not only be absurd [1] but would make paragraph III–I a meaningless part of the agreement.

If the employer had intended to encourage continued employment by penalizing mid-year terminations, as appellant argues, this result could have been achieved by language that was clear and unambiguous. It is significant that this was not done.

Paragraph III–C, as the court en banc observed, was intended "to prevent disproportionate commission payments." Otherwise, "if large commissions were earned by an executive representative early in any given year, with only the draw actually paid deducted, then if few commissions were earned during the balance of the year, the commissions paid over the year may not exceed the annual draw but still commissions would have been paid. This would amount to an overpayment of the employee." This interpretation seems to be in accord with the intention of

---

1. This becomes even clearer if we assume that an executive representative leaves the division because of promotion to a salaried, supervisory or management position within appellant's organization.

470

the parties as expressly set forth in their agreement. It permits also that paragraph III–I be given a reasonable and equitable interpretation.

■ Appellant also contends that the trial court erred in its determination of the amount of commissions due. Specifically, it contends that commissions on a re-negotiated contract were not earned until the new sales contract went into effect. The trial court found, however, that commissions became due when the new contract had been successfully negotiated, even though the new contract might go into effect at a later date. The trial court was clearly correct. "Pennsylvania follows the general rule that a person employed on a commission basis to solicit sales orders earns or is entitled to his commissions when the order is accepted by his employer." *Marcin v. Darling Valve and Manufacturing Company*, supra at 723 quoting *Wilson v. Homestead Valve Manufacturing Company*, 217 F.2d 792, 798 (3rd Cir. 1954); *Republic Foreign Products Co. v. Southwark Foundry & Machine Company*, 269 Pa. 522, 525, 113 A. 74, 78 (1921).

Judgment affirmed.

PRICE, J., did not participate in the consideration or decision of this case.