**In re ZERODEC MEGA CORPORATION, Debtor.**

**ZERODEC MEGACORP., Plaintiff,**

**v.**

**TERSTEP OF TEXAS, INC., Defendant.**

**Bankruptcy No. 82-05578G.**
**Adv. No. 84-1197G.**

United States Bankruptcy Court,
E.D. Pennsylvania.

April 8, 1986.

Marvin Krasny, Mark J. Packel, Mark Kompa, Adelman Lavine Krasny Gold & Levin, Philadelphia, Pa., for debtor/plaintiff, Zerodec Mega Corp.

Gary P. Lightman, Philadelphia, Pa., for defendant, Terstep of Texas, Inc.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The proposition confronting us is whether the sales commission attributable to a prepetition sale is a prepetition claim in light of the fact that the commission was only payable when the purchaser paid for the goods, which occurred postpetition. For the reasons stated below, we conclude that the commission is a prepetition claim.

Although set forth in our previous opinion in this matter,[1] the facts of this dispute are as follows:[2] The debtor is the manufacturer of certain construction components and, on occasion, dealt with the defendant, Terstep of Texas, Inc. ("Terstep"). On the construction project at issue, ("the Aetna Project") Terstep was the "specifying representative" for the debtor, i.e., Terstep "lobbied" with the builder for the use of the debtor's products. On the Aetna

---

1. *Zerodec Mega Corp. v. Terstep of Texas, Inc.* (In Re Zerodec Mega Corp.), 47 B.R. 304 (Bankr. E.D. Pa. 1985), *rev'd in part and remanded*, 60 B.R. 884 (E.D.Pa.1985). In our previous opinion we granted partial summary judgment in favor of the debtor. That order was interlocutory as prescribed by the Bankruptcy Rules and we expressly stated that "at trial on the remaining merits of the case we will allow Terstep to establish that any of the debtor's obligations to it arose postpetition and thus be subject to setoff." 47 B.R. at 309. Fed.R.Civ.P. 54(b), which is incorporated in this action through Bankruptcy Rule 7056(a), states that:

(b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties *only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction,* any order

or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and *the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.* Fed.R.Civ.P. 54(b) (emphasis added). We did not direct the entry of final judgment on our order granting summary judgment, and thus our opinion at 47 B.R. 304, and accompanying order, were interlocutory and subject to revision. The order of the district court did nothing more than state that Terstep be allowed to prove the size of its claim and the pre- or post-petition nature of the claim. This, of course, was what we intended, was what we stated we would do in our opinion and was what is specified in Fed.R.Civ.P. 54(b). Why did Terstep feel compelled to appeal at that point? We cannot say.

2. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

Project, the debtor agreed to give Terstep a commission for all of the debtor's materials that the builder agreed to incorporate in the building. The builder agreed to accept a certain quantity of goods which generated a commission of $6,731.25 for Terstep. The debtor's contract with Terstep also provided that Terstep's commission would not be disbursed until the builder paid the debtor for the work performed. After the builder agreed to install the debtor's goods in the project, but before funds were disbursed to the debtor for the work performed, the debtor filed a petition for reorganization under chapter 11 of the Bankruptcy Code ("the Code").

Terstep has stipulated that it owes the debtor $17,314.38 for goods sold directly to Terstep *after* the filing of the petition. The parties have also agreed that the debtor owes Terstep a *post*petition credit of $7,218.73. The question under scrutiny on remand from the district court, is whether Terstep's commission of $6,731.25 is a *post* petition, rather than a *pre*petition, claim.

■ Whether the sales commission at issue arose after the filing of the petition is pertinent due to the nature of set-off in bankruptcy. Set-off is authorized under 11 U.S.C. § 553 [3] of the Code. This provision merely sanctions the use of any state-created right of set-off; it does not create an independent right of set-off. Since one of the requisites of set-off is the mutuality of debts, prepetition debts cannot be offset against postpetition obligations. *Cooper-Jarrett, Inc. v. Central Transport, Inc.*, 726 F.2d 93, 96 (3d Cir.1984). Thus, only if we conclude that the commission is a post-

3. § 553. Setoff
(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—
(1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title:
(2) such claim was transferred, by an entity other than the debtor, to such creditor—

petition claim, can Terstep set-off that claim against the postpetition obligation it owes the debtor. Hence, we proceed to determine whether the nature of the commission at issue is prepetition or postpetition.

■ In the Code a "claim" is defined as:
§ 101. Definitions
In this title—

\* \* \* \* \* \*

(4) "claim" means—
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

\* \* \* \* \* \*

11 U.S.C. § 101(4). The legislative history of the Code reveals that a claim is given the

broadest possible definition.... The statute contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.

(A) after the commencement of the case; or
(B)(i) after 90 days before the date of the filing of the petition; and
(iii) while the debtor was insolvent; or
(3) the debt owed to the debtor by such creditor was incurred by such creditor—
(A) after 90 days before the date of the filing of the petition;
(B) while the debtor was insolvent; and
(C) for the purpose of obtaining a right of setoff against the debtor.
11 U.S.C. § 553 (in part).

H.R.Rep. 95–595, 95th Cong., 1st Sess. 309 (1977), *reprinted in,* 1978 U.S. Code Cong. & Ad. News 5787, 6266. Under 11 U.S.C. § 502(c),[4] the bankruptcy court is empowered to estimate all contingent, unliquidated or disputed claims. The incorporation of a provision such as § 502(c) in the Code, represented a radical departure from the procedure under the previous bankruptcy statute, the Bankruptcy Act of 1898. 3 *Collier on Bankruptcy* ¶ 502.03 (15th ed. 1985). *Collier* states that:

> Section 101(4) defines claims in so broad a fashion as to leave no room for doubt that contingent claims may be asserted against the assets of the debtor and are to be, at the very least, estimated prior to a distribution of the debtor's assets.

3 *Collier on Bankruptcy* ¶ 502.03 n.5 (15th ed. 1985). Ergo, all doubt as to the time that a claim arose, should clearly be resolved in favor of finding it a prepetition claim. Applying this law to the case before us, we conclude that federal law provides an adequate and proper basis on which to conclude that Terstep's commission is a prepetition claim.

■ Furthermore, state law provides an independent basis for holding that the said commission is a prepetition claim. In the absence of a provision in an employment contract to the contrary, in Pennsylvania an employee selling goods on commission, earns his commission "when he obtains an order which is accepted by his employer." *Wilson v. Homestead Valve Mfg. Co.,* 217 F.2d 792, 798 (3d Cir.1954), *cert. den.,* 349 U.S. 916, 75 S.Ct. 606, 99 L.Ed. 1250 (1955); *Republic Foreign Products Co. v. Southwark Foundry & Machine Co.,* 269 Pa. 522, 525, 113 A. 74 (1921); *Hazell v. Servomation Corp.,* 294 Pa. Super. 465, 470, 440 A.2d 559 (1982); *Marcin v. Darling Valve & Mfg. Co.,* 259 F.Supp. 720, 723 (W.D. Pa. 1966); *c.f. In Re Halyard Realty Trust,* 37 B.R. 260, 263 (Bankr. D. Mass. 1983) (construing Massachusetts state law). In *Re-public,* Southwark contracted with Republic for the latter to sell ten engines. Pursuant to the employment agreement, Southwark was to pay Republic a total commission of $11,000.00, with $1,000.00 to be paid within three months of the sale, and $1,000.00 upon the shipment of each of the ten engines. 269 Pa. at 525, 113 A. 74. The contract for the sale of the ten engines was ultimately cancelled because of the inception of World War I and none of the engines were delivered. *Id.*

Republic instituted suit for its entire commission. Southwark denied liability "... because payment was provided for only when the engines were shipped, and none ever were." *Id.* The trial court awarded Republic its full commission. The Supreme Court of Pennsylvania affirmed, holding that "... it is clear [that] the duties of the [sales] agent were fully performed when he secured the order for the engines." *Id.* at 525, 113 A. 74. The Supreme Court concluded that "[t]he nonperformance of a contract ... does not ordinarily relieve the promisor from liability to pay commissions to the [sales] agent...." *Id.*

■ Accordingly, on the basis of *Republic,* we conclude that Pennsylvania state law provides that Terstep's claim for commission arose prepetition. We have reached this result after considering the authorities submitted by Terstep and rejecting them as unpersuasive on the issue at hand: *In re F/S Computer Corp.,* 38 B.R. 384 (Bankr. W.D. Pa. 1984); *In Re American Home Rentals,* 10 B.R. 53 (Bankr. W.D. Mo. 1981); and *In Re Amco Products, Inc.,* 17 B.R. 758, 764 (Bankr. W.D. Mo. 1982).

We will accordingly enter judgment in favor of the debtor and against Terstep in the amount of $10,095.65. Hence, Terstep's prepetition claim against the debtor is $6,731.25.

---

**4.** (c) There shall be estimated for purpose of allowance under this section—

> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
>
> (2) any right to payment arising from a right to an equitable remedy for breach of performance.

11 U.S.C. § 502(c).