In re ESTATE OF Margaret
M. BRENNEN.

Appeal of Commonwealth of
Pennsylvania, Department
of Revenue.

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2003.

Decided Dec. 31, 2003.

Thomas J. Gohsler, Harrisburg, for appellant.

Richard B. Tucker, III, Pittsburgh, for appellee.

BEFORE: SMITH–RIBNER, Judge, and FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

The Commonwealth of Pennsylvania, Department of Revenue (Department) appeals from an order of the Court of Common Pleas of Allegheny County that reversed a determination of the Department's Board of Appeals that Margaret M. Brennen (Decedent) retained a life estate in her home that was subject to inheritance tax when she died. The Department questions whether the trial court erred as a matter of law in reversing the Board of Appeals where (a) this Court determined in *Estate of Kinert v. Department of Revenue*, 693 A.2d 643 (Pa. Cmwlth.1997), that a retained right to possess and enjoy real estate was the equivalent of a taxable life estate for inheritance tax purposes and (b) Decedent retained a taxable interest in her home by retaining a right to possess and to receive income and by paying for the expenses related to the real estate until her death.

I

The trial court decided the case as a matter of law on the pleadings. They represented that Decedent was involved in a serious automobile accident on December 25, 1987, suffering a subdural hemato-

ma that left her mentally incapacitated and requiring full-time nursing services. With such nursing care, Decedent continued to reside in her home. Her nephew and attorney-in-fact James H. Bregenser, Sr. (Bregenser, Sr.) signed for Decedent as Grantor the "Margaret M. Brennen Qualified Personal Residence Trust Agreement" (QPRTA) on March 20, 1998. It created the Margaret M. Brennen Qualified Personal Residence Trust (Trust) with James H. Bregenser, Jr. (Bregenser, Jr.) as Trustee, and it agreed that title in the residence should be taken in the name of the Trustee.

The QPRTA stated further in Article I(A) that the Grantor intended to make a completed gift to Decedent's nephew Hugh J. Brennen or his issue per stirpes of a vested remainder interest in 40 percent of the trust assets, and to Bregenser, Sr. or his issue of a vested remainder of 60 percent of the trust assets, subject only to Decedent's retention of the right to live in, occupy and use the residence held by the trust, the right to receive income from the trust for one year from the date of the agreement and the right to receive a contingent annuity interest. Article I(B) stated that the Grantor intended the Trust to constitute a Qualified Personal Residence Trust under Treasury Regulations at 26 C.F.R. § 25.2702–5(c). The QPRTA provided that the term of the Trust was for one year, and in fact a deed was executed transferring the property from the Trust to Hugh J. Brennen and Bregenser, Sr. on March 26, 1999.[1] Decedent continued to reside in the residence, which is at 2028 Hycroft Drive until her death in November 2000.

The Board of Appeals in a brief decision and order stated that the Department issued an appraisement and assessment that increased the taxable value of the transfer reported as item 1 on Schedule G of the original inheritance tax return, which was the residence, from zero to $434,808. This resulted in a balance due of $65,221.20. The Estate argued that the transfer was not subject to tax because Decedent made a completed gift of a vested remainder interest in the property to her two nephews more than a year before her death, subject only to Decedent's right to occupy the residence for a one-year period beginning March 20, 1998. In support it submitted a copy of the QPRTA and a copy of a 1998 United States Gift Tax Return, Form 709.

The Board noted that Section 2107(c)(5) of the Inheritance and Estate Tax Act (Inheritance Tax Act), Act of March 4, 1971, P.L. 6, *as amended,* added by Section 36 of the Act of August 4, 1991, P.L. 97, 72 P.S. § 9107(c)(5), provides that a transfer made without valuable and adequate consideration is subject to the tax if "the transferor expressly or impliedy reserves for his life or any period which does not in fact end before his death, the possession or enjoyment of, or the right to the income from, the property transferred...." The Board stated that Decedent continued to reside in the real estate until her death; therefore, notwithstanding the provisions of the QPRTA, it concluded that she reserved, for her life, the possession and enjoyment of the real estate. It denied the Estate's protest.

On the Estate's appeal, the trial court stated that the Board's opinion mentioned

---

1. Article II(A) of the QPRTA provided that the Trustee should hold the residence for the benefit of Decedent "[d]uring the trust's term...." Article III(B)(1) provided: "This trust ... shall cease to qualify as a Qualified Personal Residence trust if, prior to the expiration of the *one year term* or the earlier death of MARGARET M. BRENNEN any of the following events ... shall occur...." (Emphasis added.)

the QPRTA but gave no indication of the Board's deliberations regarding it; therefore the court started with a clean slate in construing it. In view of the circumstances surrounding the execution of the QPRTA, and in view of the express statement that the Trust was to constitute a qualified personal residence trust under specified Treasury regulations, the court concluded that it was possible to give effect to the document for what it purported to be, a qualified personal residence trust agreement. Construing other provisions, such as the language in Article III(A) that if Decedent "dies prior to the expiration of the term of years of this trust" and the language in Article III(B) that the Trust shall cease to be qualifying if specified events occur "prior to the expiration of the one year term" of the Trust, the court concluded that the term of the Trust was one year and that the parties believed that the transfer from Decedent to her nephews was intended at the conclusion of one year following the execution of the trust document.

The court noted that an agreement must be considered as a whole, with all the different parts considered and each interpreted in the light of the others, citing *Pritchard v. Wick*, 406 Pa. 598, 178 A.2d 725 (1962), and it determined that the parties intended to vest the transferees with rights in the property immediately enforceable at law and in equity, subject to a one-year reserved term of enjoyment from the time the document was executed. The court concluded that *Estate of Kinert*, which did not involve a qualified personal residential trust and where the distinction between the devise of a life estate and the granting of a "mere license" was at issue, did not compel a different conclusion.

Noting that courts should prefer interpretations of doubtful contract language that are fair and customary, the court stated that the most that the settlor could be said to have reserved under the agreement was a one-year right to residence and incidental privileges consistent with that right. The agreement did not allow Decedent an expectation of possession or enjoyment after the one-year reservation, and the fact that she did occupy the property until her death was not dispositive. The court concluded that the QPRTA contained sufficient expression of Decedent's intent to make it effective to transfer her interest in the *res* and all incidents thereto before her death; therefore, the transfer was not taxable under Section 2107(c)(5).[2]

II

The Department first argues that this Court in *Estate of Kinert* concluded that a retained right to possess and enjoy real estate is the equivalent of a life estate. In that case the will of a testator granted her two foster sons the right to reside for the rest of their lives in her home, on condition that they pay fire insurance and property taxes and that they maintain the residence in the same general state of repair as at the time of her death; if they did not, the property was to be liquidated and the proceeds distributed to charitable remaindermen. The will characterized this as a "terminable life estate." The orphans' court concluded that the interest of the children was a mere license to occupy the premises rather than a life estate. On the Department's appeal this Court noted that the polestar of construction of a will is the intent of the testator, which must be determined from the entire language used. The testator described the interest as a "ter-

---

2. The Court's review of an orphans' court decision is limited to determining whether the record was free from legal error and whether the findings of fact were supported by substantial evidence. *Estate of Kinert*.

minable life estate," and she used the term "devise," which technically applies to interests in real property as well as "bequeath," which technically applies to personalty. The Court also agreed with the Department that there was a taxable transfer of value under Sections 2102 and 2107(b) of the Inheritance Tax Act, 72 P.S. §§ 9102 and 9107(b), no matter how the rights were described, and the Court remanded for a determination of the value of the life estate.

■ The Department asserts that Decedent here transferred an interest in property to her nephews through the QPRTA, while reserving certain rights as a life tenant, such as the right to an annuity should the property be damaged or destroyed during the term of the QPRTA. Assuming arguendo that Decedent did transfer all of her rights to the residence under the QPRTA one year after its execution, the Department argues that the admission that Decedent resided in the home until her death indicates that she retained something of tangible value in her estate. Even if Decedent's medical condition made it impossible for her to decide to stay in the home, under Section 5604(b) of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § 5604(b), Bregenser, Sr.'s decision as attorney-in-fact bound her as the principal as if she were competent and not disabled. An agent's exercise of discretion binds the principal, *Estate of Reifsneider*, 531 Pa. 19, 610 A.2d 958 (1992), and the Department argues that the decision to stay is therefore attributable to Decedent. No evidence was produced that Decedent paid rent, although the record reflects that expenses of the property were paid from her accounts. The Department asserts that Decedent never relinquished her right to possession and control until she died, and therefore she held a taxable interest under *Kinert.*

In the Department's closely related second argument it cites Richard L. Grossman & M. Paul Smith, Pennsylvania Inheritance and Estate Tax § 9107(c)(5) 6.3 (5th rev. ed.2003), for the proposition that the retention of enjoyment of property is equivalent to the reservation of the income thereof. The Department acknowledges that the Internal Revenue Service accepted the designation of the qualified personal residence trust here but contends that it merely highlights the different standards for taxability used by the Internal Revenue Service and the Department. Under United States Treasury Department regulations, a qualified personal residence trust may hold insurance policies on a residence, and under 26 C.F.R. § 25.2702–5(c)(7)(iii)(A) the governing instrument must provide that if damage or destruction renders it unfit for use as a residence, the trust ceases to be a qualified personal residence trust on a date two years after the damage or destruction or the date of the term holder's interest in the trust, if earlier, unless the replacement or repairs are completed or a new residence acquired. If the property is not repaired or replaced, the trustee is required to convert the qualified personal residence trust into a qualified annuity trust, to pay income not less frequently than annually. The Department thus argues that Decedent retained the right to income from the property for the remainder of her life. Citing a case decided under a now-repealed provision very similar to Section 2107(c)(5) of the Inheritance Tax Act, it notes that where a transferor retains a right of possession and enjoyment for life or for any period that ends before death, the transfer may be subject to tax.

The Estate counter-states the question involved as whether the QPRTA provided for a one-year term such that Decedent made a completed gift of her residence to

her nephews in March 1999. It refers to specific language of the QPRTA, including that in Article III(B)(1) referring to the one-year term of the Trust. The Estate argues that provisions in Article II of the QPRTA that the residence should remain available for the personal use of Decedent and that she shall maintain the residence from her personal funds all are limited by their context as part of Article II, which is headed "Administration During Term of Trust" and does not apply otherwise. There is no dispute that during the one-year term of the trust the property was to remain at all times available for the personal use of Decedent. Similarly, provisions in Article II relating to receipt of "Qualified Proceeds" by the Trust in the event of damage and the Decedent's rights to have such proceeds used on her behalf apply only during the term of the trust. The provision for the "Qualified Annuity Trust" was required under regulations at 26 C.F.R. 25.2702–5(c), but, contrary to the Department's argument, Article III(B)(2)(b) expressly states that the "Annuity Term" is from a cessation date "until the end of the term of this trust," and Article III(B)(2)(c)(9) provided for distribution of Trust assets at the end of the Annuity Term or the earlier death of the Grantor.

The Estate further argues that the Department's reliance on *Estate of Kinert* is misplaced. That case involved a transfer by will, which undeniably granted a lifetime right to use property, not a term of years. It is instructive, however, that the Court looked to the words in the governing instrument and gave them controlling effect. Nowhere is the term "life estate" used in the QPRTA. Finally, the Estate argues that the mere fact that Decedent resided in the residence until her death is not relevant or dispositive. Under Section 2107(c)(5) of the Inheritance Tax Act the Court must determine whether the trans-feror reserved either a life estate or a specified period of possession. If a life estate was reserved, the transfer is taxable. If an interest for a period of years was reserved, and the period ended before the transferor died, the transfer is not taxable. In the present case, a one-year right of possession and enjoyment was reserved, and that period ended before Decedent died. Conduct after the end of that period is not relevant. Even if it were, the Estate has argued that Bregenser, Sr. made the decision personally, as Decedent's favorite nephew, to permit her to reside in the house. There was no arrangement or understanding to that effect.

■ After its review of the record, the Court agrees with the trial court and the Estate that the QPRTA is sufficient to establish that Decedent did not retain a life estate in the residence. The Court notes that what is not at issue in this case is the propriety of the agreement by Bregenser, Sr., as attorney-in-fact for Decedent, to the gift of the residence to the Trust and then to himself and his cousin. Assuming that he properly exercised such authority, and considering the agreement as a whole as is required, *Pritchard*, the Court concludes that the language of the various provisions referenced by the Estate is adequate to show the intention that the Trust should exist for one year, after which the reserved right of Decedent to possess and enjoy the property or any benefits from it would end. The Board looked only to the fact that Decedent resided in the property until her death and gave this determinative effect notwithstanding the provisions of the QPRTA, and it erred in that regard. The trial court correctly examined the provisions of the QPRTA and determined that they reasonably comported with the interpretation advanced by the Estate. Accordingly, be-

cause the trial court committed no error in its decision, this Court affirms.

Senior Judge McCLOSKEY dissents.

### ORDER

AND NOW, this 31st day of December, 2003, the order of the Court of Common Pleas of Allegheny County is affirmed.