**Bernard F. MARCIN, Plaintiff,**

v.

**DARLING VALVE & MANUFACTUR-
ING COMPANY, Defendant.**

Civ. A. No. 65-760.

United States District Court
W. D. Pennsylvania.

Oct. 7, 1966.

---

A. M. Wiggins, Jr., Reed, Smith, Shaw, & McClay, Pittsburgh, Pa., for plaintiff.

John A. Metz, Jr., Pittsburgh, Pa., for defendant.

## OPINION

ROSENBERG, District Judge.

This is here on cross motions for summary judgment filed by the plaintiff and the defendant under Rule 56 of the Federal Rules of Civil Procedure on the grounds that there is no genuine issue as to any material fact and each claims that he is entitled to judgment as a matter of law.

This action was brought by Bernard F. Marcin against the defendant, Darling Valve and Manufacturing Company, for payment of commissions which the plaintiff claims inured to him as the result of services rendered to the defendant as a commission salesman under a contract of employment.

The facts giving rise to this action as they concern the employment relationship between the parties are not disputed and are as follows: The plaintiff was employed by the defendant in 1954 as a commission salesman. In 1956 the parties entered into a new contract of employment, on a standard printed form prepared by the defendant, under which the plaintiff worked as a commission salesman soliciting sales orders for the defendant until 1964. The agreed upon compensation was expressed in terms of a base salary plus a percentage commission on the sales orders arising in, or shipped into, the plaintiff's territory. The contract also provided that payment of the commission was deferred until the close of the accounting period during which the goods covered by the sales order were shipped.

On or about February 14, 1964, the plaintiff received a letter from the defendant requesting that the plaintiff sign a new contract which was enclosed. The new contract tendered was the same printed form as the existing contract but contained a rider providing for a reduced rate of commission on "nuclear orders". The new contract was to be retroactively effective to January 2, 1964. The plaintiff corresponded with the defendant to determine how the new tendered contract would affect his commissions on sales orders[1] which he had placed prior thereto. The defendant stated its intent to the plaintiff to have the new contract apply retroactively to the orders already on the defendant's books. While correspondence and discussions were going on between the parties with regard to the new contract, the defendant sent a notice to the plaintiff dated April 7, 1964, exercising its right to terminate the existing contract by the giving of thirty days written notice.

The parties were unable to come to agreement on the terms of a new written contract, and none was ever entered into by them. The employment contract of January 2, 1956 and the plaintiff's employment thereunder ceased on May 7, 1964 as the result of the cancellation notice sent by the defendant on April 7, 1964. Although the plaintiff's employment under the contract ceased on May 7, 1964, at the defendant's request he remained with the defendant as an employee at will to enable the company to locate a successor. The plaintiff's tem-

---

[1] The plaintiff alleges that at that time there were on the defendant's books nuclear sales orders of approximately $200,000 on which shipment had not been made.

porary employment was terminated on June 19, 1964. The plaintiff was paid commissions for the sales orders arising during this temporary employment (May 7, 1964 to June 19, 1964), and no issue with regard to it is raised in this action.

The defendant continued until September 19, 1964, to pay the commissions due the plaintiff on the sales orders received by the defendant on or before May 7, 1964, but after September 19, 1964, the defendant refused to pay commissions on such sales orders received on or before May 7, 1964, for its reason that the shipments were made after September 19, 1964. The plaintiff claims commissions still due him in the amount of $39,980.33.

At the argument both parties agreed that the first question presented is one of law of the matter of liability. The plaintiff contends that all of the proceedings present a question of law, so that disposition may be made. The defendant maintains that while the liability question is one of law, the question of damages, should liability be found as a matter of law, is a matter for the jury's determination.

The contract of employment governs the terms and conditions of the employment relationship. The following provisions are pertinent here:

"Termination of Employment:

Resignation or Discharge:

If the salesman should voluntarily resign or be discharged for any reason, he will be credited with standard commissions rates upon all sales in company records as of the official date of employment termination. The salesman will be paid commissions covering such sales when the orders are shipped, but no commission shall be paid on material not shipped within three months of date of termination.

Death:

In the event of the salesman's death his heirs, estate or personal representative will be credited with and receive payment on all sales and commissions under the conditions and as described under 'Territorial Reassignment,' Paragraph I.

Term of Contract:

Upon termination of employment for any reason, salary and drawing account, if any, shall terminate. This contract shall remain in force until thirty days after written notice by either the company or the salesman to the other advising of intention to terminate, or until the death, discharge or resignation of the salesman.

Within five days after the termination of this contract, all company property in the possession of the salesman shall be returned to the company.

Interpretation:

This agreement is made with reference to and shall be construed and enforced in accordance with the laws of Pennsylvania."

The issue presented is simply one of interpretation of the quoted provisions of the employment contract. Is the plaintiff salesman entitled to commissions on all sales orders placed by him on the defendant's books, regardless of when delivery is made, if the contract is terminated in the manner specified in the above-stated agreed-upon facts? Or, stated, in another way, is the limitation contained in the contract, that no commission shall be paid on material shipped three months after termination, applicable when a salesman's employment contract is terminated by the thirty-day notice provision of the contract?

In refusing to pay commissions on orders shipped after September 19, 1964, the defendant relies on the language contained in the contract that "If the salesman should voluntarily resign or be discharged for any reason" he will be "credited with standard commission rates upon all sales" on the records at the time of termination and will continue to receive the payments when the orders are shipped, but only if the orders are shipped within three months of termination. It is the defendant's position that the contract provides only three ways to terminate the defendant's employment—resig-

nation, discharge or death. Further, the termination of employment occurred, not on May 7, 1964, when the contract was terminated, but on June 15, 1964, when the plaintiff's "employment at will of defendant" was terminated by the defendant. Therefore, contends the defendant, the "Term of Contract" paragraph under which the written contract was terminated is irrelevant to the question of commission payments upon termination of employment.

■ The contract of employment governed the terms and conditions of the plaintiff's employment and payment therefor only so long as the contract was in effect. If the contract terminated on May 7, 1964, obviously the plaintiff's employment thereunder must have ceased on that date. He could not be said to be employed under a non-existent contract. The temporary employment of the plaintiff subsequent to May 7, 1964 and until June 15, 1964, was requested by the defendant as a convenience until a replacement could be found and trained. The terms and conditions of the temporary employment period are not revealed; the parties agree that no issue is presented as to this period. From the facts presented, it is clear that the employment under the written contract and the subsequent, though co-terminus, temporary employment were two separate and distinct relationships. It is the rights of the plaintiff in the first employment relationship, under the written contract, which concerns us here, and we must look for resolution of the present dispute within the four corners of that instrument.

■■ On the second page of the employment contract is the proviso: "Interpretation: This agreement is made with reference to and shall be construed and enforced in accordance with the laws of Pennsylvania." Pennsylvania follows the general rule of law that a person employed on a commission basis to solicit sales orders earns or is entitled to his commission when the order is accepted by his employer. Wilson v. Homestead Valve Mfg. Co., 217 F.2d 792 (C.A.3,

1954); Republic Foreign Products Co. v. Southwark Foundry & Machine Co., 269 Pa. 522, 113 A. 74 (1921). The entitlement to commissions is not affected by the fact that payment may be delayed, as in the present case, to the accounting period during which shipment is made. Republic Foreign Products Co. v. Southwark Foundary & Machine, supra, at page 525, 113 A. 74.

■ However, under the law parties sui juris bind themselves by their lawful contracts, and the courts cannot alter the contracts because they may work a hardship or later seem unfair to one of the parties. Corona C. & C. Co. v. Dickinson, 261 Pa. 589, 592, 104 A. 741 (1918).

In the instant case, the parties of choice inserted certain limitations upon the payment of commissions. These limitations on payment of commissions are contained in the section entitled "Termination of Employment" and relate to termination by "resignation", "discharge", and "death". The section is unambiguous as to the limitations imposed. It places a year's limitation on payments of commissions on orders placed before termination of employment when such termination results from the death of the employee. The section is not ambiguous as to the limitation of payment of commissions on orders placed before termination of employment when such termination results from discharge of the employee while the contract is still in effect. Such a situation might arise where, for example, an employee is suspected of forgery, embezzlement or of any wrongdoing which might warrant a dismissal. The contract is also unambiguous as to limitation of payment of commission when a salesman employee, faced with a better job opportunity, summarily quits his employment giving no notice. In all of these situations it is clear that the limitations on payments applies, as evidenced by the clear language of the contract.

The plaintiff contends that another situation is that presented here, a situation where the parties terminate the em-

ployment under this contract, not by discharge or resignation, but by the giving of thirty-days' notice. This situation is not covered by the language of the limitations provision and, he claims, was not intended by the parties to be covered by any limitations. In support of his position he relies on the language of the contract which states:

> "This contract shall remain in force until thirty days after written notice by either the company or the salesman to the other advising of intention to terminate, or until the death, discharge or resignation of the salesman."

The plaintiff claims that the language is clear and unambiguous and, consequently, that there are four, not three, possible ways of terminating employment under the contract and ending the relationships thereunder.

The defendant contends that the two sections are separate and distinct and that "the only provision made for commission *in either of these sections* is that providing that such commissions shall be paid upon termination of employment by death, resignation or discharge and limiting such right to commissions to restricted periods of shipment after termination of the employment." This reasoning fails to recognize that other provisions of the contract deal with payment to the salesman for services performed. The first page of the contract contains a detailed statement regarding salary, quotas, and commission rates. It is on that portion of the contract that the salesman's right to compensation depends. The limitations on payments are necessarily contained in the section dealing with limitations and I can infer nothing one way or another from the failure of the parties to repeat the agreed upon payment provisions of their contract in the section dealing with the term of that contract.

■ The parties are free to limit commission payments as they desire and the limitations imposed could have ranged across a wide spectrum of possibilities. I cannot conclude that because the parties imposed limitations under certain conditions of termination that they intended to impose limitations under all conditions of termination.

■ A guiding principle in the interpretation of contracts is that the instrument shall be construed or considered as a whole, Pritchard v. Wick, 406 Pa. 598, 601, 178 A.2d 725 (1962); City of Philadelphia v. Philadelphia Transportation Co., 345 Pa. 244, 250, 26 A.2d 909 (1942).

It must be assumed that the words "discharge" and "resignation" in the present contract have a similar and consistent meaning throughout the contract, whether used in the paragraph dealing with termination of employment and limited commission payments or in the paragraph dealing with the term of the contract.

■■ It is also a general rule of construction that language in the contract will be construed most strongly against the party responsible for using it. Alcoa S. S. Co. v. United States, 338 U.S. 421, 424, 70 S.Ct. 190, 94 L.Ed. 225 (1949); Melnyk v. The Globe Indemnity Company, 351 F.2d 953, C.A.3, 1965; Fairbanks, Morse & Co. v. Consolidated Fisheries Co., 190 F.2d 817, 822, C.A.3, 1951. The present contract was a standard form prepared and submitted to the plaintiff by the defendant and must, therefore, be construed most strongly against the defendant.

■ It must be noted that the defendant's interpretation of the contract provisions would, in effect, deprive the plaintiff of compensation for services rendered prior to the termination of the contract. As a general rule, forfeitures are not favored in the law. Massachusetts Bonding & Insurance Co. v. Johnston & Harder, Inc., 340 Pa. 253, 261, 16 A.2d 444 (1940); 17A C.J.S. Contracts § 407.

■ In summary, I conclude that the language of the contract evidences an intent to impose certain limitations on the plaintiff's rights to commissions, that the limitations are applicable only to three of the four events that can result

in the termination of the contract, and that the limitations are not applicable when the termination is effected by the giving of thirty-days notice of intention to terminate by either party.

Accordingly, for the reasons stated, the plaintiff's motion for summary judgment will be granted on the issue of liability. The action shall proceed on the remaining unresolved issues of fact as to damages. The defendant's motion for summary judgment will be denied.

