**FRANK BURNS, INC., Appellant,**

v.

**INTERDIGITAL COMMUNICATIONS CORPORATION, William W. Erdman, Richard Saunders and Mark Lemmo, Appellees.**

Superior Court of Pennsylvania.

Submitted Oct. 14, 1997.

Filed Dec. 5, 1997.

Reargument Denied Feb. 5, 1998.

Roger E. Legg, Coatesville, for appellant.

Kelly Ramsdell, Haddonfield, NJ, for appellees.

Before CIRILLO, President Judge Emeritus, and SAYLOR and OLSZEWSKI, JJ.

OLSZEWSKI, Judge.

Frank Burns, Inc. (appellant) appeals from the denial of its post-trial motions to amend a verdict entered in its favor following a bench trial before the Montgomery County Court of Common Pleas. We affirm.

Appellant is a Pennsylvania corporation organized to provide the engineering services of its only employee, Mr. Frank Burns. On February 9, 1993, appellant entered a consulting agreement with InterDigital Communications Corporation (ICC). ICC is a Pennsylvania corporation that produces and markets sophisticated telecommunications systems. In 1993, ICC became aware that a component used on two of its electrical boards was becoming obsolete. Consequently, ICC decided to redesign the boards and eliminate the obsolete component. ICC contracted with appellant for this purpose. The agreement terms essentially require appellant to review the board designs for problems, perform any necessary redesign, debug the boards, and supply full manufacturing documentation for the new boards. In return appellant would receive sixty ($60) dollars per hour for Mr. Burns's services. The agreement specifically identified appellant as an independent contractor and not an employee. The agreement also allowed ICC to terminate appellant for any reason upon one week's notice.

Mr. Burns worked for appellant throughout February and March without incident. In April, however, ICC became dissatisfied with Mr. Burns's work product and a dispute arose. Daniel Kim and Mark Lemmo, ICC employees responsible for reviewing Mr. Burns's work, became convinced that Mr. Burns was logging excessive hours and providing unprofessional documentation. Consequently, ICC refused to pay appellant for 491 hours that Mr. Burns logged, even though ICC had already approved 425 of those hours in writing. Mr. Burns ceased working for ICC on June 10th. ICC formally terminated appellant on July 8th.

Appellant filed a complaint against ICC and three of ICC's employees (appellees) in the Montgomery County Court of Common Pleas on November 9, 1993. The complaint alleges violation of the Pennsylvania Wage

Payment and Collection Law (WPCL)[1], breach of contract, and unjust enrichment. Under the WPCL claim appellant seeks $31,860 in unpaid wages, plus liquidated damages in the amount of $7,965, as well as attorney's fees and costs. In the alternative, appellant seeks either $31,860 under the breach of contract claim or $29,460 for unjust enrichment. In response, appellees filed a counterclaim in the amount of $29,460 alleging appellant breached the consulting agreement by failing to provide the specified services.

A two-day bench trial was held on November 20 and November 21, 1996. On November 25, the court dismissed appellant's WPCL claim finding the statute inapplicable to appellant. The trial court, however, entered a verdict in favor of appellant in the amount of $25,500 plus interest for breach of contract. The trial court also dismissed appellees' counterclaim. All parties filed motions for post-trial relief, which were denied after oral argument. In the instant appeal, appellant challenges both the dismissal of its WPCL claim and the adequacy of the monetary verdict.[2]

### The Wage Payment and Collection Law

■ Appellant's first three issues challenge the finding that the WPCL is inapplicable to appellant. The trial court found the WPCL inapplicable because appellant is not an employee. We agree.

Section 260.9a of the WPCL provides that "any employe[e] or group of employe[e]s, labor organization or party to whom any type of wages is payable may institute actions provided under [the WPCL]." 43 P.S. § 260.9a(a). Appellant presents no argument that it is a group of employees, a labor organization, or a "party to whom any type of wages is payable." Instead appellant contends that the WPCL is applicable because it was an employee of ICC.

■ Reasoning that the definition of "employee" is limited to natural persons, the court below found that appellant, a corporation, cannot qualify. We agree. The WPCL provides no statutory definition of the term "employee." Where a statute does not supply a definition for a term, we must apply the rules of statutory construction. 1 Pa.C.S. § 1502(a)(1). Under these rules, technical words are to be construed according to their "peculiar and appropriate meaning." 1 Pa. C.S. § 1903(a). Two Pennsylvania statutes, the Unemployment Compensation Act[3] and the Worker's Compensation Act,[4] provide technical definitions of the term "employee." These definitions specifically exclude corporations. See Unemployment Compensation Act, 43 P.S. § 753; Worker's Compensation Act, 77 P.S. § 22. In contrast, under common law agency theory a corporation may be an employee. See generally Myszkowski v. Penn Stroud Hotel, 430 Pa.Super. 315, 634 A.2d 622 (1993) (reaching the merits on the question of whether an employer-employee relationship exists between two corporations). We find the statutes more persuasive than agency theory as to the WPCL meaning of "employee" because the statutes, like the WPCL, concern compensation for employees and, therefore, provide a more similar context. Thus, we conclude that a corporation cannot qualify as an employee for purposes of the WPCL.

Appellant argues that the use of the term "person" in the WPCL definition of "employer" demonstrates that corporations may be employees. We agree that the "employer" definition is relevant, but reach the opposite conclusion. The WPCL defines "employer" as including "every person, firm, partnership,

---

1. 43 P.S. §§ 260.1— § 260.12

2. The specific questions posed by appellant are:
    1. Whether a corporation may attain the status of an employee under the Pennsylvania Wage Payment and Collection Law.
    2. Whether the parties' "consulting agreement" precluded the application of that statute.
    3. Whether the record contained sufficient credible evidence of an employee relationship.

4. Whether the employer's pay liability was dependent on its later written approval of [Mr.] Burns's work.
    5. Whether termination in breach of the consulting agreement occurred for which the corporate employer should respond in damages.

3. 43 P.S. §§ 751–914.

4. 77 P.S. §§ 1–2624.

association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. § 260.2a. Grammatically, an "employee" is an entity that is employed. *See Webster's Ninth New Collegiate Dictionary* 397 (1984) (defining the suffix "-ee" as "recipient or beneficiary of (a specified action)"). In the definition of employer, the entity employed by the employer (i.e., the employee) is "any person in this Commonwealth." From this appellant deduces that "any person in this Commonwealth" can qualify as an employee under the WPCL. We agree.

■ Appellant next argues that the term "person" in this context includes corporations. We disagree. The term "person" does not include corporations when the context clearly indicates otherwise. 1 Pa.C.S. § 1991. The term "person" initially appears in the definition of "employer" at the phrase "every *person*, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer." 43 P.S. § 260.2a (emphasis added). When interpreting a statute we must presume "[t]hat the General Assembly intends the entire statute to be effective and certain." 1 Pa.C.S. § 1922(2). Interpreting the term "person" in the phrase "*person*, firm, partnership, association, *corporation*, receiver or other officer of a court of this Commonwealth and any agent or officer" to include corporations would violate this presumption by rendering the word "corporation" therein superfluous. Therefore, the phrase clearly indicates that "person" does not include corporations. Absent contrary indication, words that have a clear meaning in one place are interpreted the same throughout a statutory section. *Watson v. Unemployment Compensation Bd. of Review*, 176 Pa.Super. 490, 109 A.2d 215 (1954); *Commonwealth v. Stingel*, 156 Pa.Super. 359, 40 A.2d 140 (1945). Nothing in the definition suggests that the term "person" changes meaning mid-sentence. Therefore, we conclude that the term excludes corporations when it later appears in the phrase "any person in this Commonwealth." Because this phrase, as discussed above, relates to

employees, the definition of "employer" supports our conclusion that corporations may not qualify as employees under the WPCL. Consequently, the court below correctly determined that appellant is not an employee. Hence, the court properly dismissed its claim under the statute.

Having found that appellant cannot bring an action under the WPCL, we need not address appellant's second and third questions.

### The Monetary Verdict

■ Next appellant challenges the adequacy of the trial court's verdict in appellant's favor on its breach of contract claim. Appellant raises two issues regarding the verdict. First, appellant claims that the trial court decreased the verdict by incorrectly finding that ICC's liability was contingent on its approval of Mr. Burns's work. Second, appellant claims that the trial court erroneously failed to award appellant damages for ICC's breach of the notice provision in the termination clause of the parties' consulting agreement. Finding that the verdict provides a fair resolution of this case, we affirm.

In stating these issues, appellant has misconstrued the findings of the trial court. The court found that appellant billed "excess hours on the project for what was produced," but also found that ICC was partially to blame for the excess billing because "ICC was disorganized in it's approach to the project and changed its focus as to what it expected of the plaintiff which, though in the fair ambit of the contract, led to confusion and uncertainty." Slip Opinion 6/2/97, at 15. Having found all parties partially at fault, the court was left without a clear measure of damages. Consequently, the court fashioned a compromise verdict that it found equitable: appellant receives credit for a total of 425 hours of work. This amount of hours is derived by subtracting the unapproved hours from the total that appellant billed. *Id.* at 15–16. This compromise includes resolution of appellant's claim for ICC's breach of the notice provision. *Id.* at 16. Given the circumstances, the trial court concluded that

the compromise produced a "fair resolution of the case." *Id.*

■ "Such compromises in determining damages are commonplace in litigation and are looked upon with favor by the courts." *Austin v. Harnish,* 227 Pa.Super. 199, 323 A.2d 871 (1974). Compromise verdicts normally occur in negligence cases tried before juries. *See Kiser v. Schulte,* 538 Pa. 219, 233–34, 648 A.2d 1, 8 (1994) (defining a compromise verdict as "one where the jury, in doubt as to the defendant's negligence or plaintiff's contributory negligence, returns a verdict for the plaintiff but in a lesser amount than it would have if these questions had been free from doubt.") (citation omitted). Such verdicts, however, are equally appropriate in contract cases tried before the bench. *See generally Spang & Co. v. U.S. Steel Corp.,* 519 Pa. 14, 545 A.2d 861 (1988) (discussing the broad discretion of trial courts in contract cases to fashion a fair estimate of damages where a specific amount cannot be accurately determined); *Mangum v. Pennsylvania Financial Responsibility Assigned Claims,* 449 Pa.Super. 1, 4, 672 A.2d 1324, 1326 (1996) (stating that "the findings of a trial court sitting without a jury have the same force and effect on appeal as a jury's verdict.") (citation omitted). Moreover, we will not disturb a verdict unless the "injustice of the verdict should stand forth like a beacon." *Elza v. Chovan,* 396 Pa. 112, 118, 152 A.2d 238, 240 (1959). Having reviewed the record, we find no such injustice in this case.

Affirmed.