Ray W. LITTLE, and LTS, Inc. Plaintiffs,

v.

USSC GROUP, INC., and Christian Hammarskjold, Defendants.

No. Civ.A. 05–1244.

United States District Court, E.D. Pennsylvania.

Dec. 13, 2005.

Julie A. Uebler, Uebler Law, Plymouth Meeting, PA, for Plaintiffs and Counter Defendant.

Richard A. Gaffin, Miller Canfield Paddock & Stone PC, Grand Rapids, MI, Morton F. Daller, Daller Greenberg & Dietrich, Conshohocken, PA, for Defendants.

Joseph F. Kampherstein, III, Daller Greenberg & Dietrich, Conshohocken, PA, for Defendants and Counter Claimants.

## MEMORANDUM

ROBERT F. KELLY, District Judge.

This is a sales commission contract case. Ray Little ("Little") is the owner of LTS, Inc. ("LTS"), an independent sales representative firm. Little and LTS ("Plaintiffs") sued Defendants USSC Group, Inc. ("USSC") and its owner, Christian Hammarskjold ("Hammarskjold"), for allegedly failing to pay commissions, interfering with Plaintiffs' prospective relationship with a new entity, and violating Pennsylvania's Wage Payment and Collection Law. Defendants have filed a motion for summary judgment on all of Plaintiffs claims. For the following reasons, Defendants' motion for summary judgment is granted in part and denied in part.

## I. RELEVANT BACKGROUND

USSC is a corporation located in King of Prussia, Pennsylvania, that manufactures and sells seats to the bus, train, auditorium and education markets. Hammarskjold is USSC's president and sole owner. In August 1998, USSC retained Little as an independent sales representative. Little is a Canadian citizen who lives within an hour and half to two hour drive of Toronto.

A month after USSC retained Little, USSC expressed immigration related-concerns over Little's ability to travel freely between the United States and Canada. USSC wanted Little to create a corporate entity. Little agreed and formed LTS in September, 1998 as a Canadian corporation. Little is the sole owner and employee of LTS. However, Little claims that he was an employee of USSC despite his independent contractor label. He had USSC business cards that identified him by his name and title as "Ray W. Little—Sales." The cards did not identify LTS. Furthermore, he claims that USSC group used Little's home address for any business it had with LTS.

On January 1, 2003, USSC and LTS entered into a Representative Agreement ("the Agreement") that superseded the August 1998 agreement. The Agreement states that it is "by and between USSC Group ... and LTS Inc." (Defs.' Mot. for Summ. J. Ex. 4 at 1). The Agreement governed the relationship between LTS and USSC, including how commissions were paid, expenses were reimbursed, and terminations were carried out. The Agreement also contains an integration clause, stating that the Agreement "constitutes the entire agreement between the parties...." (*Id.* at ¶ 8B).

On July 23, 2004, Hammarskjold, USSC's Director of Sales Rick Klotz ("Klotz"), and Beth Haley from USSC's human resources department met with Little. They questioned him about his reimbursement requests for June 24th and June 25th in which he stayed in a Toronto hotel with a female friend. After listening to Little's answers to their questions, Hammarskjold and Klotz asked Little to leave the room so they could speak in private. When Little returned Hammarskjold terminated him for engaging in "conduct harmful to the company." (Little Dep. Tr. at 117). According to Little, Hammarskjold explained his definition of "harmful conduct" when he told Little, "You were bopping your girlfriend on the company dime." (*Id.*).

Defendants' current motion expands on Hammarskjold's explanation and presents a more detailed list of Little's faulty reimbursement requests that, to them, constituted "conduct harmful to the company." Little sought reimbursement for: personal cell phone calls, including calls to his girlfriend (*Id.* at 70–72); cell phone minutes consumed while calling a date line (*Id.* at 107–08); hotel rooms in the Toronto area where his girlfriend would visit him (*Id.* at 83–86; Defs.' Ex. 5–11); and meals for his girlfriend and himself. (*Id.* at 96, 99).

According to Defendants', Little also attached the same phone bill to two different expense reports and submitted incorrect meal reimbursement requests. (*Id.* at 78–79; Defs.' Ex. 5).

Little disagrees and presents a different story. According to Little, he was surprised to be fired for engaging in "conduct harmful to the company," but he had an inkling that he was going to be fired. Notably, Little does not dispute that he submitted the expense reports Defendants allege. He argues that the offending expense reports were either proper or, if harmful to the company, too old to use as the basis for terminating him on July 23, 2004. Little concedes that submitting a reimbursement request for cell phone minutes consumed while calling a date line was grounds for his termination. However, when it happened, USSC and Little came to an understanding that Little would never submit another improper expense report again. In fact, after reprimanding Little, Defendants agreed not to put the incident on Little's permanent record. Perhaps because there was no permanent record of the incident, the parties cannot remember when this incident occurred. Hammarskjold could not remember if it happened a year ago or two years before July 23, 2004. (Hammarskjold Dep. Tr. at 108).

Little states that every other reimbursement request was both reasonable and necessary business expenses. He argues that his girlfriend's involvement is irrelevant because the cost to the company was the same. Both parties agree that the hotel did not charge more for accommodating two people rather than one. Little asserts that he made a reasonable amount of personal phone calls and meal requests while traveling and argues that who he called or ate with is irrelevant. Any other incorrect reimbursement request error, he

states, was a mistake and while he admits he should not have been reimbursed for it, he does not think he should have been fired for an honest mistake.

As stated above, Little claims to have had an inkling that he would be terminated before July 23, 2004. He based this belief on USSC's repeated requests for contract negotiations. According to Little, after signing the January 1, 2003 Agreement, USSC wanted to decrease the base salary and commission percentage LTS received. Klotz had presented Little with new versions of the existing Agreement that Little refused to sign. During the months prior to being terminated on July 23, 2004, Little claims to have earned $110,836.25 in commissions, but was paid a total of $18,955.15 by USSC in August 2004. Defendants assert that they are not required to pay the commission because of the Agreement's termination "for cause" provision.

By terminating the contract on July 23, 2004 without paying the commissions allegedly earned, Plaintiffs contend that Defendants breached the January 1, 2003 Agreement. They believe they are entitled to the outstanding commissions earned prior to July 23, 2004 in the amount of $91,881.10 regardless of whether they were terminated "for cause." Plaintiffs also believe that they were not fired "for cause" and, pursuant to the "without cause" clause in the Agreement, USSC was required to provide 30 days notice of termination during which Plaintiffs would continue to be paid their salary and commissions. Therefore, Plaintiffs argue that Defendants must also pay LTS and Little 30 days base salary and commissions on sales that were booked between July 23, 2004 and August 23, 2004. Plaintiffs also allege that by refusing to pay the commissions earned, Defendants violated Pennsylvania's Wage Payment and Collection Law.

Defendants argue that not only was the firing "for cause," but also that Plaintiffs' right to compensation, including previously earned commissions, was extinguished on July 23, 2004. Defendants also argue that Plaintiffs are not entitled to protections of Pennsylvania's Wage Payment and Collection Law.

## II. STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. A factual dispute is material only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. 2505.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a sum-

mary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989)(citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548 (1986)). Further, the non-moving party has the burden of producing evidence to establish prima facie each element of its claim. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper. *Id.* at 322, 106 S.Ct. 2548; *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

## III. *DISCUSSION*

I must decide if there is a genuine issue of material fact as to whether USSC breached its contract with Plaintiffs and violated Pennsylvania's Wage Payment and Collection Law ("WPCL") by refusing to pay Plaintiffs' commissions.[1] I find that although Plaintiffs cannot allege a violation of Pennsylvania WPCL, there is a genuine issue of material fact as to whether USSC breached the Agreement by refusing to pay Plaintiffs' commissions.

## A. The Pennsylvania Wage Payment and Collection Law

█ Section 260.9a of the WPCL provides that "any employee or group of employees, labor organization or party to whom any type of wages is payable may institute actions provided under [the WPCL]." 43 P.S. § 260.9a. Corporations such as LTS are not "employees" for WPCL purposes and are not entitled to the WPCL's protections. *Frank Burns, Inc. v. Interdigital Communications Corp.*, 704 A.2d 678, 680–81 (Pa.Su-

per.1997). The facts of the *Frank Burns, Inc.* decision are analogous to this case. In *Frank Burns, Inc.*, the defendant entered into a contract with the plaintiff corporation whereby the plaintiff corporation's sole employee would provide the defendant with consulting services. The parties to the contract included the plaintiff corporation and the defendant. The sole employee of the plaintiff corporation was not a party to the contract. After the contract was terminated, the plaintiff corporation filed suit alleging violations of Pennsylvania's WPCL. The plaintiff corporation argued that it was an employee of the defendant. *Id.* The court disagreed and dismissed the claim. It held that "a corporation cannot qualify as an employee for purposes of the WPCL." *Id.*

█ Since LTS cannot bring a Pennsylvania WPCL claim, Little argues that he, in his individual capacity, is eligible to bring a WPCL claim because USSC refused to pay commissions in accordance with the January 1, 2003 Agreement. According to Little, he and LTS were one and the same. Little states in his complaint that the sole reason he created LTS was to ameliorate Defendants' "immigration-related concerns about Mr. Little's ability to travel freely between Canada and the United States to service his sales territory." (Pls. Compl. at 3). Little also argues that he was always treated as an employee of USSC and had business cards with the USSC logo on them with no mention of LTS.

Regardless of how he viewed himself or how he was viewed by USSC, Little was not a party to the January 1, 2003 Agreement between LTS and USSC. The Agree-

---

1. Although Plaintiffs originally brought a tortious interference claim, they now appear to concede that it should be dismissed by stating "Defendants are correct that Plaintiffs have failed to produce sufficient evidence on their claim for intentional interference with prospective contractual relations to proceed on that claim." (Pls.' Resp. Br. at 22, n. 2). Plaintiffs' tortious interference claim is, therefore, dismissed.

ment states it is "by and between USSC Group, Inc .... and LTS Inc." (Agreement, Defs.' Summ. J. Mot., Exhibit 4). Although Little viewed LTS as a corporate entity of himself, by receiving the protections of the corporate entity, he created an intermediary between himself and USSC. Indeed, Little made sure that LTS was a separate corporate entity formed in Ontario, Canada, that complied with corporate requirements. LTS filed articles of incorporation. According to Little, LTS met the proper reporting requirements and paid the proper corporate taxes. Meanwhile, Little filed personal tax returns. Little received his salary from LTS. USSC paid commissions and salary to LTS and LTS would then pay Little. Little admitted to being an employee of LTS. Finally, Little understood that his corporate entity signed the contract with USSC.

By creating a corporate entity to accommodate USSC's request, Little also created a corporate entity that contracted with USSC. Little cannot now ignore that corporate entity's existence. Little is not a party to the Agreement between LTS and USSC. He, therefore, cannot claim a violation of the Pennsylvania WPCL. Since LTS is also prohibited from bringing a claim under the Pennsylvania WPCL, Defendants' motion for summary judgment on Plaintiffs' Pennsylvania's WPCL claim is granted.

## B. Breach of Contract Claim

USSC's refusal to pay commissions raises a genuine issue of material fact as to whether it breached the January 1, 2003 Agreement with LTS. LTS argues that it is entitled to the commissions and wages it earned prior to being terminated by USSC and through August 24, 2004. USSC argues LTS' entitlement to any commissions and wages ended when Little was fired for engaging in "conduct harmful to the company." Whether LTS is entitled to any further wages and commissions, therefore,

is entirely dependent on the interpretation of two clauses of the January 1, 2003 Agreement. The first issue presented is whether the January 1, 2003 Agreement's termination clause is so clear that it precludes LTS from recovering commissions earned before it was terminated. The second issue presented is whether there is no genuine issue of material fact as to whether Little's conduct constituted "conduct harmful to the company."

1. *Ambiguity in the January 1, 2003 Agreement*

■ Generally, under Pennsylvania contract law, the terms of the contract determine when commissions are computed and paid. *Daniel Adams Associates, Inc. v. Rimbach Pub., Inc.,* 360 Pa.Super. 72, 519 A.2d 997 (1987); *see also Levan v. Royal Paper Products, Inc.,* 199 Pa.Super. 505, 185 A.2d 801 (1962). Where a contract is silent or ambiguous, Pennsylvania law generally will not divest an employee's right to an earned commission. Unless there is a contract provision to the contrary, an employee selling on a commission basis is entitled to his or her commission on a sale when the sale is made and accepted by the employer. *Wilson v. Homestead Valve Mfg. Co.,* 217 F.2d 792 (3d Cir.1954); *Marcin v. Darling Valve & Mfg. Co.,* 259 F.Supp. 720, 723 (1966). "The entitlement to commissions is not affected by the fact that payment may be delayed...." *Marcin,* 259 F.Supp. at 723. Furthermore, an employee's right to an earned commission is not forfeited upon the termination of the employee unless the contract of employment provides otherwise or further work is required by the employee to secure the commission. *Chaflin v. Manufacturers' Club of Philadelphia,* 104 Pa.Super. 163, 158 A. 575, 576 (1932).

■ Of course, "under the law parties sui juris bind themselves by their lawful

contracts, and the courts cannot alter the contracts because they may work a hardship or later seem unfair to one of the parties." *Marcin*, 259 F.Supp. at 723. Any ambiguity in the contract is to be construed against the contract's drafter, here USSC.

USSC argues that the contract unambiguously denies LTS's rights to the $91,881.10 in unpaid commissions on the sales LTS booked before terminating the contract on July 23, 2004, as well as the commissions LTS claims to have earned after July 23, 2004. The January 1, 2003 Agreement's termination clause states:

> Company may at any time after written notice to Representative giving the reasons therefore, terminate Representative's contract and his right to compensation hereunder, for cause (as hereinafter defined). In such event, Representative's rights to compensation hereunder shall terminate as of the effective date of his termination, and he shall have no further rights under this Agreement.

(Jan. 1, 2003 Agreement, Defs.' Mot. for Summ. J. Ex. 4). Defendants argue that the language of the Agreement is clear that any right to commissions ceases as of the date of termination for cause. Defendants note that the Agreement does not state that commissions are paid upon termination for cause if they were "earned" prior to termination for cause and argue that such a provision should not be added to the Agreement.

I must construe any ambiguity in the Agreement against Defendants. The language of the Agreement only states that LTS's "rights to compensation" terminate on the date of termination. Defendants argue that I should add the modifier "any" to this language and divest Plaintiffs' rights to compensation that were already earned or that the modifier "any" is presumed in the current language. Plaintiffs

concede that the phrase terminates their "future" rights to compensation from USSC. However, it is unclear that the Agreement's language creates a forfeiture clause that divests Plaintiffs of commissions and salary they had already earned. I find that the termination clause is ambiguous as to whether Plaintiffs' rights to commissions already earned prior to July 23, 2004 were retroactively terminated.

Due to ambiguity in the Agreement, the fact finder must decide whether Plaintiffs actually "earned" the sales commissions. The parties agree that Plaintiffs earned sales commissions when he "sold" the Defendants' products, however, they disagree on when a "sale" occurs. The contract states "[c]ommissions will be paid on the following: Complete transit bus seat assemblies sold to the end user, etc." (Jan. 1, 2003 Agreement, Defs.' Mot. for Summ. J. Ex. 4). The Agreement also indicates that USSC Group would not pay the sales representative for earned sales commissions until "payment of invoices by Vendees." (*Id.*). Defendants argue that, based on this language, they are only obliged to pay commissions on orders where USSC already received payment from the customer before the termination (in cases of termination for cause), or within 30 days thereafter (for termination without cause). (Pls.' Ex. 2, Hammarskjold Dep. at 158–59, 163).

However, a reasonable fact finder could find that the Agreement differentiates between the "sale," which secured Plaintiffs' right to the commissions, and the "payment" of commissions, which governed how and when commissions were to be paid. Another contract provision supports the conclusion that commissions are earned when the order is made or "booked." In the case of death, USSC "shall have the obligation to pay the Representative's estate such portion of his

compensation and expenses ... as may be accrued but unpaid as of the date of his death. Including but not limited to booked orders...." (Jan. 1, 2003 Employment Agreement, Defs.' Mot. for Summ. J. Ex. 4, ¶ 4.A.). Furthermore, Plaintiffs point out that USSC paid sales commissions to other terminated representatives based on orders booked through the date of termination. When USSC terminated Gordon Nevison of the Nevison Group, Inc., USSC paid commissions on all orders booked through the effective date of the termination. (Pls.' Ex. 7, Letter from Rick Klotz to Gordon Nevison dated November 5, 2004). The agreement between USSC and the Nevison Group, Inc. contains the same language as the Agreement signed by LTS regarding the termination clause and the earning of commissions. Therefore, even if Plaintiffs were terminated for cause, there is a genuine issue of material fact as to whether the January 1, 2003 Agreement precludes Plaintiffs' rights to wages and sales commissions earned prior to his termination date.[2]

### 2. Whether Plaintiffs Were Terminated For Cause

■ Defendants argue that there is "no genuine issue of material fact that USSC terminated LTS for cause and for engaging in conduct that is 'harmful' to USSC." (Defs.' Mot. for Summ. J. 11). I disagree. The Agreement defines "cause" for termination to include the following, "indictment of Representative for any felony, fraud

and/or embezzlement; other conduct which is harmful to the Company." (Jan. 1, 2003 Agreement, Defs.' Mot. for Summ. J. Ex. 4, ¶ 4.B.). Defendants argue that Little's submission of improper expense reports constituted conduct that is harmful to the Company. The Agreement contains the following statement regarding reimbursement of business expenses:

> Company will reimburse Representative for all business expenses incurred by Representative which are reasonably and necessary in carrying out Representative's duties under this Agreement, upon the presentation to the Company by Representative of an itemized account of such expenses or such other vouchers or forms in accordance with Company's normal practices in effect from time to time.

(Id. ¶ 3.C.). Little testified at his deposition that he knew that submitting improper business expenses could be ground for termination. However, he also testified that every expense report he submitted was a reasonable business expense with one exception. The one exception was Little's submission of personal telephone bill expenses in which he called, in his words, a dating service. The incident happened so long ago that Hammarskjold could only guess whether it happened one or two years ago. Defendants could have terminated Little at the time of the incident. Instead, they accommodated Little's request to omit any reference to the incident on his permanent record. Due to the fact

---

**2.** Defendants argue in the alternative that even if USSC did not terminate the Agreement for cause, I should enter an order limiting Plaintiffs' recovery to commissions on orders that USSC booked for LTS' accounts within 30 days of the termination and for which USSC received payment. The Agreement states that either party could end the Employment Agreement on 30 days notice. However, as discussed above, the Agreement

is ambiguous on when Plaintiffs' vested right to previously earned commissions were terminated. Due to the fact that the Agreement does not mandate the limitation on damages that Defendants argue for, I find that there is a genuine issue of material fact as to whether Plaintiffs were entitled to commissions on orders that USSC booked for LTS accounts that USSC was paid for after August 23, 2004.

that neither party recalls when the incident took place, it is possible that the January 1, 2003 Agreement was entered into by the parties after Little's indiscretion. Therefore, there is a genuine issue of material fact as to whether Defendants could have relied upon this incident when they terminated Plaintiffs on July 23, 2004.

Little contends that every other business expense report submitted to USSC was "reasonable and necessary" in carrying out his duties under the Agreement. Other than "reasonable and necessary," USSC did not have any written guidelines defining what expenses would be reimbursed. Defendants claim that Little submitted expense reimbursement requests including excessive hotel reimbursements, meal receipts, and personal phone calls. Little testified that each of these expenses was related to his business travel because his job consisted of extensive travel throughout his territory. It is within the fact finder's province to determine whether Little thought the hotels expense, meal expenses, travel expenses, and personal calls were "reasonable and necessary" for Little to fulfill his duties under the Agreement.[3] Therefore, there is a genuine issue of material fact whether Little was terminated "for cause."

An appropriate order follows.

## *ORDER*

**AND NOW**, this 13th day of December, 2005, having considered Defendants' Motion for Summary Judgment, Plaintiffs' Memorandum in Opposition, and Defendants' Response thereto, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 24) is:

1. **GRANTED** as to Plaintiffs' Pennsylvania Wage Payment and Collection Law Claims and Plaintiffs' Tortious Interference Claims; and

2. **DENIED** as to Plaintiffs' Breach of Contract Claims.

---

**3.** Defendants argue that USSC's decision to terminate the Agreement for cause for improper reimbursement requests involves a business judgment that should not be "second-guessed" by this court and cite *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 332 (3d Cir.1995), to support this proposition. In *Brewer*, the Third Circuit decided that the judicial inquiry on whether a worker performed well in the role of a salesperson was limited "to whether the employer gave an honest explanation of its behavior." *Id.* (quoting *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir.1992) (citations and internal quotations omitted)). The current case presents a different inquiry, but a similar result. Whether expenses are "reasonable and necessary" is a different inquiry than whether a sales person's performance is adequate. Neither party challenges whether Little performed the role of a salesperson well. Indeed, his ability to earn commissions suggests that he performed so well that USSC asked him to accept a lower sales commission before terminating him. In *Brewer*, the salesperson's excellent performance was evidence of a discriminatory animus on the part of his employer that overcame the business judgment presumption. *Id.* at 333. Here, Little's performance and its request to renegotiate the Agreement evidences a discriminatory animus on the part of USSC that rebuts the business judgment presumption. Therefore, the fact finder must decide whether Little submitted reimbursement requests that he knew were not "reasonable and necessary."